[Civil. No. 15639.   Second Dist., Div. Three.   Oct. 31, 1947.]

FRANCES AGNEW, Appellant, v. EDWIN LARSON, Respondent.

Cuthbert J. Scott for Appellant.

Harold B. Pool for Respondent.

KINCAID, J. pro tem.—Plaintiff appeals from a judgment of dismissal following her declination to amend her first amended complaint, to which the demurrer of defendant Larson had been sustained with leave to amend.

Plaintiff's cause of action is one for damages for medical malpractice which she claims to have suffered as a patient while under the care and as a proximate result of the negligence of Larson, hereinafter referred to as defendant, and another defendant physician, John C. Wilson. A general demurrer by the latter was overruled, his answer filed, but trial on the issues thus joined has not yet been had.

Larson's demurrer, while predicated on the two grounds of insufficiency of the complaint to state a cause of action against him and the bar of subdivision 3 of section 340, Code of Civil Procedure, was sustained on the second ground and he concedes on this appeal that, excepting for the bar of the statute of limitations, the complaint states a cause of action against him.

The first amended complaint alleges, in effect, that on January 27, 1942, defendant Larson was employed by the plaintiff as her physician for the purpose of examining her physical

condition and prescribing medical treatment or medication therefor; that on numerous occasions to and including June 1, 1943, defendant treated plaintiff by prescribing, and directing her to take, a substantial quantity of medicine consisting of stilbestrol in tablet form; that throughout such period plaintiff took the prescribed tablets at the times and in the number as directed by defendant; that on June 1, 1943, defendant prescribed and directed plaintiff to obtain an additional 100 tablets of stilbestrol, to be taken by her at the rate of one tablet daily.

The pleading further alleges that about July 17, 1944, plaintiff employed defendant Wilson as a physician to examine and treat her and that he accepted such employment; he thereupon prescribed for plaintiff and directed her to take tablets of stilbestrol and to continue taking them under a new prescription following the completion of the taking of the quantity of tablets then on hand pursuant to the Larson prescription of June 1, 1943; that plaintiff thereupon did take, in accordance with the prescription, the tablets prescribed by Larson, thereafter commencing to take, and taking for some 26 successive nights, the stilbestrol tablets as prescribed by Wilson.

It is further alleged that although the defendants held themselves out as being doctors of medicine, possessing that degree of skill and learning ordinarily possessed by other reasonably skillful and prudent physicians practicing in the community, they nevertheless, in prescribing stilbestrol for her, prescribed a drug which is a synthetic estrogen containing cancerous properties which may produce or cause cancer of a woman's breast, particularly of women with a family history of breast cancer and which should not be administered to women with such a family history, nor for prolonged periods of time; that when its administration is indicated it should be prescribed only after a physical examination of the patient has been made; that defendant Larson actually knew that plaintiff had such a family history in that plaintiff's mother had had a breast cancer and had died therefrom; that plaintiff did not know that the said drug so prescribed for and taken by her contained the aforementioned properties or might cause her to sustain cancer of her breast, nor could she, by the use of ordinary care and diligence, have discovered such facts.

It is further alleged that on or about January 15, 1945, and while plaintiff was under the care and treatment of both

defendants, a lump developed in plaintiff's right breast which laboratory tests on February 8, 1945, disclosed to be cancer; that on February 10, 1945, plaintiff was required to and did submit to the removal by surgery of her right breast in order to prevent the cancer from growing and spreading to other parts of her body; that the taking by her of such medicine over the prolonged period heretofore described, when considered in conjunction with her physicial condition and her family history of breast cancer caused her cancerous condition and that in prescribing and directing plaintiff to take such medicine over the long period of time alleged and with knowledge that plaintiff had a family history of breast cancer defendants failed to possess or exercise that degree of skill and learning ordinarily possessed and exercised by other skillful physicians practicing in Los Angeles County, as a proximate result of which she suffered general and special damages.

The original complaint was filed herein by plaintiff on January 15, 1946. "It is the settled law in this state that an action by a patient against a physician and surgeon for injuries sustained by the former, by reason of the negligent or unskilled treatment of the latter, is an action sounding in tort and not upon a contract. Such an action is therefore barred by the provisions of subdivision 3 of section 340 of the Code of Civil Procedure one year after the date of the injury." (*Huysman* v. *Kirsch*, 6 Cal.2d 302, 306 [57 P.2d 908].)

The date of injury which starts the running of the statute of limitations, however, is not necessarily the same date as that when the negligent act or omission of the physician took place. As pointed out in *Huysman* v. *Kirsch*, *supra*, (p. 312), the leading case of *Marsh* v. *Industrial Acc. Com.*, 217 Cal. 338 [18 P.2d 933], where several employees were injured in the course of their employment by inhaling dust-laden atmosphere, resulting in serious impairment of health, is authority for the principle that "the date of the injury was not the date of the exposure, nor even the date of the last exposure to the dust-laden atmosphere, but rather the time when the employees became aware that their injuries were due to such exposure, or when by the exercise of reasonable care and diligence they might have ascertained that fact. In other words, . . . that the statute of limitations did not run against these employees until they knew the causes of their injury, or by reasonable care and diligence should have known the cause of their injury."

In applying this rule to cases of malpractice, our Supreme Court, in *Huysman* v. *Kirsch*, had facts before it for consideration showing, according to the allegations of the complaint, that a defendant physician performed an abdominal operation upon the plaintiff, at which time, on closing the wound, he inserted a tube in her body to drain the wound and negligently left it therein, without her knowledge, until the tube was removed by defendant 20 months later, during which time he continued to treat the patient; that as a consequence of such negligent act painful and infected sores were created to her damage. The court said (pp. 312, 313) : "If we apply this principle to the facts in the present action, the same results will follow as the appellants in this action had no knowledge of the presence of the drainage tube in the body of Mrs. Huysman until it was removed therefrom by the respondent on September 26, 1932. During all this time she was under the exclusive care of the respondent, a reputable and skillful physician and surgeon, and both Mrs. Huysman and her husband relied solely upon him for information as to her physical condition and as to her failure to regain her health. It cannot be said, therefore, that they had any knowledge whatever of the cause of her failure to recover from the operation, or that they could have gained that knowledge by the exercise of due care and diligence prior to September 26, 1932. Before that date they were as completely in the dark as to the cause of Mrs. Huysman's injury as were Marsh and his fellow workers while they were inhaling the dust-laden air in their employer's factory until the disease resulting therefrom had reached such a stage as to indicate its cause. We can see no good reason why, if the statute of limitations did not begin to run in one case, that it should run in the other. There is one very material element present in the case before us which was lacking in the Marsh case. In that case the ignorance of the employees was due to the nature of the business in which they were employed and not to any improper or negligent act of their employer. In the present case, the ignorance of the appellants as to Mrs. Huysman's condition was due solely to the negligent act of the respondent. This fact in our opinion makes the present action even stronger than the Marsh case in respect to the running of the statute."

The same rule was applied in the case of *Faith* v. *Erhart*, 52 Cal.App.2d 228 [126 P.2d 151], the complaint charging

that the defendant dentist, in the course of his professional services to plaintiff, so negligently pulled some of her teeth as to cause roots or portions thereof to break off and remain imbedded in her jaw; that although he had full knowledge of these facts he represented to plaintiff that the extractions were complete and no further dental care or treatment was necessary therefor; that relying upon defendant's representations she sought no further dental or medical care thereon until a time some 10½ years later when X-ray films revealed to her, for the first time, the presence of the said broken roots, all in an infected state; that her health was seriously damaged thereby. The defendant dentist's plea in bar of the statute of limitations was rejected. (To the same effect see *Pellett* v. *Sonotone Corp.*, 55 Cal.App.2d 158 [130 P.2d 181]; *Petrucci* v. *Heidenreich*, 43 Cal.App.2d 561 [111 P.2d 421]; *Alford* v. *Industrial Acc. Com.*, 28 Cal.2d 198, 202 [169 P.2d 641]; see Note, 144 A.L.R. 214.)

Defendant, while conceding the applicability of the foregoing rule to cases arising out of surgery, in which the patient subsequently discovers foreign substances such as sponges, clamps, tubes, pieces of broken bones and other objects to have been left in his body, contends that it does not apply to the administration or introduction into the patient's body of a drug or medicine. We fail to find any basis of differentiation, however, in the respective situations.

A quite similar factual background as that before us confronted the Maryland Court of Appeals in the case of *Hahn* v. *Claybrook*, 130 Md. 179 [100 A. 83, L.R.A. 1917C 1169]. There the plaintiff's complaint alleged that, between the years 1902 and 1910, the defendant physician negligently prescribed for the use of plaintiff a drug called argentum oxide, and which was taken in such quantities by her as the patient of defendant, under his direction and treatment, as to cause a silver poisoning manifesting itself by a chronic discoloration of the skin. Defendant raised the plea of the bar of a three-year statute of limitations. The evidence disclosed the discoloration of the skin became sufficiently apparent to have put her upon notice and inquiry about six years after plaintiff had first begun taking the prescribed drug. The court held that, inasmuch as by the exercise of ordinary care and diligence she could then have discovered the cause of her injury, that was the date when her cause of action accrued and the statute of limitations commenced running.

■ The nature or character of the foreign substance or matter introduced into the body of the patient by the physician is immaterial. The physician is chargeable with knowledge and foresight, to the degree of learning and skill possessed by physicians of good standing practicing in the same locality (*McCurdy* v. *Hatfield,* 30 Cal.2d 492 [183 P.2d 269]), of both the nature and effect of such foreign substance or matter upon the patient and, ■ where injury proximately results from the negligent act of the physician and the patient has relied upon him for information as to his physical condition as well as for the results that may reasonably be anticipated from the introduction into his body of the foreign substance or matter, including drugs and medicines, the statute of limitations does not commence to run until the patient knows, or in the exercise of ordinary care should have known, the cause of his injury.

■ `Plaintiff's amended complaint alleges facts showing that plaintiff first discovered the bodily injury, accruing to her as a proximate result of the negligent acts or omissions of defendants, on February 8, 1945. Her complaint was filed within the one-year period following such discovery and therefore the defense, by way of demurrer, of the statute of limitations is unavailable to defendant Larson. A cause of action having been stated by plaintiff's amended complaint, it was error to sustain the demurrer thereto.

The judgment of dismissal is reversed, with directions to the court to overrule the demurrer of the defendant Larson.

Shinn, Acting P. J., and Wood, J., concurred.