[Civ. No. 68788. Second Dist., Div. Seven. Mar. 2, 1984.]

ALYS HILLS, Plaintiff and Appellant, v.
RICHARD ARONSOHN, Defendant and Respondent.

754

**COUNSEL**

Grayson, Gross, Friedman & Phillips, Saul Grayson and Mary C. Alden for Plaintiff and Appellant.

Roswell Bottum and Joseph M. Hartley for Defendant and Respondent.

OPINION

JOHNSON, Acting P. J.—

INTRODUCTION

The trial court granted a motion for summary judgment on the ground this medical malpractice action was barred by the statute of limitations. This appeal raises the following two issues: first, whether the action is untimely as a matter of law under Code of Civil Procedure section 340.5; and second, whether the foreign body doctrine can apply where a patient received injections of liquid silicone so that the limitations period was tolled under the provisions of that statute. We agree with the trial court that the action was time barred. We accordingly affirm the judgment below.

I. *Statement of facts and proceedings below*

Appellant, Alys Hills, received intrabreast silicone injections from respondent, Dr. Richard Aronsohn, between April and June 1966.

In March 1974, Ms. Hills noticed lumps and experienced soreness in her breasts. She consulted with Dr. Paul Kaufman to determine whether the lumps were malignant. Dr. Kaufman ordered a mammogram which was performed by Dr. Linsman.

On March 27, 1974, Dr. Linsman reported that the mammogram showed "numerous nodular and lacy densities . . . [with] the typical appearance of what one sees following silicone injection." A second report to Dr. Kaufman one year later, on April 11, 1975, by Dr. Constantine Voyagis indicated that there was no change from the earlier mammogram.

The second mammogram report was followed by a physical examination on April 25, 1975, conducted by Dr. Eugene Worton. The record on appeal includes the medical records from that examination. Dr. Worton diagnosed Ms. Hills as suffering from silicone granulomatosis due to silicone injections. The doctor's records also reflect the following notation: "Recommendation: Surgery was discussed with the patient and the operative procedure was described to her in detail . . . . It was also explained that the operation is done to remove the silicone lumps . . . ."

Dr. Worton did not examine Ms. Hills again until January 6, 1977, approximately 21 months after the first examination. He wrote the following in his medical records: "The primary change since her last visit is that she feels that the lump in her right breast has gotten larger and also, that her

breasts have become more uncomfortable than they were on the previous visit." Once again, Dr. Worton diagnosed Ms. Hills as having silicone granulomatosis and discussed the surgical procedures with her. He also indicated that he explained the surgery would be performed in two stages. The first stage would consist of a bilateral subcutaneous mastectomy. And the second stage would consist of breast reconstruction. Possible complications resulting from the surgery were also discussed.

Ms. Hills did undergo surgery shortly after this examination. The bilateral subcutaneous mastectomy was performed on February 28, 1977. The breast reconstruction was performed four days later on March 4, 1977.

Ms. Hills filed the instant suit against Dr. Aronsohn for damages for medical malpractice on March 1, 1978.[1]

On May 13, 1982, Dr. Aronsohn moved for summary judgment. (Code Civ. Proc., § 437c.) He argued Ms. Hills' action was barred by Code of Civil Procedure section 340.5. That section requires medical malpractice actions to be filed within one year from the date a plaintiff discovers her injury. It further provides, however, that except for certain specified exceptions, the action is time barred unless it is also filed within three years from the date the injury was suffered.

On July 27, 1982, after opposition papers were filed, the court below granted the motion for summary judgment on the ground the action was time barred. Ms. Hills filed a timely notice of appeal.

II. *Although the action may have been timely under the one-year limitations period of section 340.5, it was time barred as a matter of law under the three-year limitations period.*

■ All of the issues presented by this case involve interpretations of Code of Civil Procedure section 340.5.[2] That section includes two prescriptive periods within which a medical malpractice litigant must bring her

---

[1]The complaint contains four causes of action, three of them against Dow Chemical Corporation. This appeal only involves the first action for medical malpractice.

[2]Code of Civil Procedure section 340.5 provides in pertinent part: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person."

cause of action or lose her right to assert it. The first provision states that "the time for the commencement of action shall be three years after the date of injury . . . ." The second provision creates an alternative limitations period of "one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury . . . ." Lest it appear, however, that the action is timely if the requirements of only one of these provisions is satisfied, the statute further requires that the action be brought within the limitation period which "occurs first." To make it even more evident that a plaintiff must satisfy the requirements of both provisions, the statute further provides that "[i]n no event shall the time for commencement of legal action exceed three years . . . ."[3]

On oral argument before this court both of the parties apparently assumed a plaintiff's action is timely if a plaintiff brings suit within *either* the one-year prescriptive period *or* the three-year prescriptive period. This is why we have stressed at the outset that section 340.5 establishes two hurdles, not one, to the timely maintenance of a medical malpractice claim.[4] Thus, if a malpractice litigant brings her action within three years from the date of injury, she must still satisfy the one-year limitations period or the action is time barred. Conversely, if the action is properly brought within one year of reasonable discovery, the action is nevertheless barred if the three-year period is not also satisfied.

Ms. Hills first argues she was not aware until March 1977 that negligent silicone injections had caused her injury and hence her action was timely according to the one-year limitation period of section 340.5. Second, she argues her action is not barred by the three-year limitation period of that section on the ground that she suffered no injury until March 1977, when she underwent surgery for the mastectomy.

These arguments are based on varying definitions of the term "injury" as used in section 340.5 and thus, before proceeding to the merits of Ms. Hills' contentions, we consider the possible ways to interpret that term. In our view there are four possible ways in which the term injury might be defined.

---

[3]The three-year period is tolled, however, by any of three situations enumerated in the statute.

[4]In *Brown* v. *Bleiberg* (1982) 32 Cal.3d 426 [186 Cal.Rptr. 228, 651 P.2d 815], our high court reversed a lower court order holding a medical malpractice claim was barred by section 340.5. (*Id.,* at p. 429.) The court first determined that the plaintiff had not failed to meet the one-year limitations period as a matter of law. (*Id.,* at p. 436.) The court then examined whether the plaintiff had also met the three-year limitations period. (*Id.,* at p. 437.) The analysis employed by our high court in *Brown* clearly implies that a plaintiff must meet *both* of the limitations provisions of section 340.5. If the law were otherwise, once the court in *Brown* had determined that the one-year period was satisfied there would have been no issue remaining with respect to the three-year period.

First, injury could be defined as the date on which the alleged negligent act occurred. Or, injury could refer to a time when the patient observes some significant physical manifestation of harm from the alleged negligence. Third, injury could be defined, by reference to the discovery rule, as the time at which a patient is aware of both the manifestation of her injury and its negligent cause. Finally, injury could refer to the date on which a patient suffers the ultimate harm of the alleged negligence.

 A. The one-year limitations period of section 340.5 does not commence to run until the patient is reasonably aware not only of the physical manifestation of her injury but the negligent cause as well.

We first consider whether this action was timely according to the provisions of the one-year prescriptive period. We agree with Ms. Hills that a triable issue exists as to whether the action was timely under that provision for two reasons. First, a motion for summary judgment should not be granted where reasonable minds could draw different conclusions from the evidence presented. (*Tresemer* v. *Barke* (1978) 86 Cal.App.3d 656, 665 [150 Cal.Rptr. 384, 12 A.L.R.4th 27].) And second, for the one-year limitations period to be activated not only must the patient be aware of her harm, but also she must be aware of the *negligent cause* of her harm. (*Ibid.*)

 Here, a triable issue of fact exists as to the date Ms. Hills discovered, or reasonably could have discovered, the *negligent cause* of her injury. It is not apparent as a matter of law that Ms. Hills discovered the cause before she claims she did on March 4, 1977, after her surgery was completed.[5] Neither is it apparent as a matter of law that through the exercise of diligence and reasonable care for her own health and welfare she could have discovered the negligent cause sooner.

Dr. Aronsohn claims Ms. Hills could have discovered silicone injections were the cause of the soreness and lumps in her breasts on March 27, 1974. On that date Dr. Linsman reported the lumps in her breasts were silicone deposits. Ms. Hills counters that the first time she was aware that *negligent* silicone deposits had caused her injury was on March 4, 1977, after the subcutaneous mastectomy was completed. Ms. Hills claims it was only after this surgery that the surgeon informed her these injuries were due to negligence.

---

[5]Dr. Aronsohn argues the operation should be deemed performed on February 28, 1977, when Ms. Hills underwent surgery for the mastectomy. However, the surgeon himself described the operation as a two-step procedure which included first the mastectomy and then the breast reconstruction. The breast reconstruction was not performed until March 4, 1977, and hence that is the relevant date for purposes of determining when the surgery was completed.

The issue of when Ms. Hills *could* have discovered the negligent cause is unclear from the record. Whether she could have reasonably discovered the negligent cause of her injury without submitting to surgery is therefore an unknown quantity. It is possible that, as she apparently argues, a surgeon cannot detect that negligent, as opposed to nonnegligent, silicone injections caused silicone granulomatosis without performing some type of exploratory surgery. If this is so, we cannot accept Dr. Aronsohn's position.

The malpractice litigant is required to diligently pursue her claim through discovery of the cause of her injury. And if she fails to do so she faces the prospect that the action will be time barred. Carrying Dr. Aronsohn's argument to its logical conclusion would mean that in order for Ms. Hills to have demonstrated due diligence she would have had to submit to a serious operation. We refuse to hold that submitting to such drastic surgery is the sole means by which a plaintiff may make the requisite showing of diligence. It is one thing to force inquiry. But it is quite another to say that Ms. Hills gave up her right to recover because she refused to have a mastectomy sooner. A plaintiff is not required to discover the negligent cause of her injuries at all costs to her own health and welfare. Rather, the plaintiff is only required to take all reasonable steps to protect her health.

We conclude that although on March 27, 1974, Dr. Linsman reported the lumps in Ms. Hills' breasts were silicone deposits, she may not have known the lumps were anything other than the effects of nonnegligent silicone injections until March 4, 1977, when surgery was completed. She claims that was the first time the surgeon informed her that *negligent* silicone injections caused her injury. Since nothing in the record refutes her claim, a triable issue exists as to the date she could have discovered the negligent cause of her harm. Accordingly, her claim was not barred as a matter of law by the one-year limitation period.

■ B. The three-year limitations period of section 340.5 provides an outer limit which terminates all malpractice liability and it commences to run when the patient is aware of the physical manifestation of her injury without regard to awareness of the negligent cause.

We do agree with the trial court, however, with respect to the three-year limitations period. Recently, in *Brown* v. *Bleiberg, supra,* 32 Cal.3d 426, our high court compared the amended version of Code of Civil Procedure section 340.5 with the law as it existed before it was enacted and later amended. We quote from that opinion since it provides a succinct explanation of the operation of the statute.

"Prior to the enactment of section 340.5 in 1970, the limitations period for all medical malpractice actions was the one-year term provided by sec-

tion 340, subdivision 3, which applies generally to actions for personal injury or death. It was established, though, that the limitations period did not commence until the plaintiff actually discovered his injury and its negligent cause or could, in the exercise of reasonable diligence, have discovered them. Thus, commencement of the running of the statute might be deferred indefinitely.

"Repeated efforts to modify this 'open-ended' discovery doctrine culminated in the enactment in 1970 of Code of Civil Procedure section 340.5, which governs actions based on 'professional negligence' by 'health care provider[s].' As enacted, the statute retained the former one-year limitations period, but circumscribed it with an outside period of four years from the date of plaintiff's 'injury,' irrespective of whether its negligent cause had or should have been discovered. At the same time, the Legislature reflected a concern about the fairness of applying the four-year period to a plaintiff whose failure to discover his cause of action stemmed from the failure of the health care provider to fulfill a fiduciary obligation to disclose errors and omissions. Thus, the enactment also provided that the four-year period was ' "tolled for any period during which [the treating physician or hospital] . . . has failed to disclose any act, error, or omission upon which such action is based and which is known or through the use of reasonable diligence should have been known to him." ' "

"In 1975, section 340.5 was amended to shorten the outside limitations period to three years. There were other substantial changes, including some restriction of the scope of the tolling provision: ' ". . . In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person . . . ." ' " (*Brown* v. *Bleiberg, supra,* 32 Cal.3d at pp. 432-433, citations and fn. omitted.)

Thus, prior to the enactment of section 340.5 the discovery rule would extend the statute of limitations period indefinitely if a patient could not have discovered her cause of action through the exercise of diligence. But section 340.5 now places an outer limit which terminates all malpractice liability once three years have passed from the date of injury. The only instances in which belated discovery is relevant to the three-year limitations period are those which are specified in the statute. If none of these exceptions apply,[6] the three-year outside limitations period is commenced regardless of a patient's belated discovery of her injury.

---

[6]Ms. Hills' final argument, that the third exception—the presence of a foreign body—applies to her action, will be discussed in section III of this opinion.

Ms. Hills, citing *Larcher* v. *Wanless* (1976) 18 Cal.3d 646 [135 Cal.Rptr. 75, 557 P.2d 507], urges that this court deem the mastectomy to be the date of her injury. In *Larcher* our high court held that the term "injury" as used in section 340.5 is "a word of art which might refer to an event occurring some time after the commission of a 'wrongful act.'" (*Id.*, at pp. 655-656.)

We agree that in the instant case the term injury does not refer to the date of the alleged negligence—the time in 1966 when Dr. Aronsohn gave Ms. Hills the silicone injections. *Larcher* makes it clear the term injury is not synonymous with the alleged wrongful act. However, we reject Ms. Hills' conclusion that she did not experience injury until she suffered her ultimate harm in the form of the subcutaneous mastectomy. The mastectomy was an operation designed to cure the injury, and not the injury itself.

In *Tresemer* v. *Barke, supra,* 86 Cal.App.3d 656, at page 664, Division Five of this court stated: "Lest it appear that it is the same event which causes both the one-year and three-year limitation periods to begin, we reiterate that the one-year period commences not merely upon discovery of the harm caused by the alleged wrongful act, but requires also 'discovery of the malpractice.'" (Citation omitted.)

It follows that the event which activates the three-year limitations period is the moment the plaintiff discovers the harm caused by the alleged negligence. Or, in the words of the court in *Larcher,* the period is activated on the date of the damaging effect of the wrongful act rather than on the date of the act itself. (*Larcher* v. *Wanless, supra,* 18 Cal.3d 646, 656.) Once the damaging effect of the alleged wrongful act is apparent, the statute is activated.[7] This event may occur even without the knowledge that negligence was the cause of the injury.

Here Ms. Hills admits she experienced soreness and noticed lumps in her breasts in March of 1974, four years before filing suit. This condition caused her to consult Dr. Kaufman later that month. This admission is sufficient to show that she suffered the damaging effect of the alleged malpractice on that date. Where "reasonable minds can draw only one conclusion . . . the question becomes a matter of law." (*Tresemer* v. *Barke, supra,*

---

[7]We do not see how the rule can be otherwise. In a medical malpractice action, where an element of the cause of action is damages, a cause of action cannot accrue until the plaintiff has suffered some legally compensable injury. To adopt a rule that the statute begins to run on the date of the alleged negligence would mean that a plaintiff is denied all possibility of recovery simply because the injury did not manifest itself until sometime after three years from the date of the negligent act. Indeed, where the injury does not manifest itself within three years of the negligent act, a plaintiff would have no opportunity whatsoever to recover since the three-year period would effectively bar the action before the cause of action even accrued.

86 Cal.App.3d 656, 665.) The inescapable conclusion is that she suffered the damaging effects of the malpractice more than three years before filing suit. Accordingly, the motion for summary judgment was properly granted.

III. *Since the foreign body doctrine only applies when the gravamen of the action concerns the negligent failure to remove a foreign substance, that exception is not available to toll the statute.*

■ Ms. Hills' final argument is that the silicone qualifies as a "foreign body" within the meaning of the exception to the three-year limitations period contained in section 340.5. She cites *Agnew v. Larson* (1947) 82 Cal.App.2d 176 [185 Cal.Rptr. 851], and *Mateo v. Rish* (1982) 86 App.Div.2d 736 [446 N.Y.S.2d 598], to support her contention that foreign matter which was intentionally introduced into a patient's body may qualify for foreign body status.

The court in *Agnew v. Larson, supra,* 82 Cal.App.2d 176, was called upon to determine when the cause of action for negligently prescribing an oral medication accrued under Code of Civil Procedure section 340, subdivision (3). Compelled by our high court's holding in *Huysman v. Kirsch* (1936) 6 Cal.2d 302 [57 P.2d 908], the court in *Agnew* noted the rule that an action for medical malpractice was governed by the discovery rule. Under that rule an action does not accrue, nor the limitations period commence, until the patient discovers or through the exercise of diligence could have discovered her injury. (*Agnew v. Larson, supra,* 82 Cal.App.2d 176, 179.) The doctor in *Agnew* admitted that in cases where a doctor negligently leaves a foreign body in the patient there was a well-settled rule that a lack of due diligence is not proved until the patient could have discovered the foreign body was the cause of her injury. (*Id.,* at p. 181.) The court in *Agnew* analogized to the foreign body cases and then stated: "The nature or character of the foreign substance or matter introduced into the body of the patient by the physician is immaterial. . . . [T]he statute of limitations does not commence to run until the patient knows, or in the exercise of ordinary care should have known, the cause of his injury." (*Id.,* at p. 182, citations omitted.)

Ms. Hills claims that this language stands for the proposition that a drug or medicine which is intentionally introduced into a patient's body qualifies for foreign body status for purposes of the tolling provision of section 340.5. In making this argument she misconstrues the issue which was before the court in *Agnew*. The issue before the court in that case was whether it could be concluded as a matter of law that the patient had failed to exercise diligence in discovering her claim. Although the court, by analogy, referred to the foreign body exception, it did not, as Ms. Hills claims, hold an

intentionally prescribed drug was the same as a foreign body unintentionally left in a patient's body after surgery.

*Mateo* v. *Rish, supra,* 446 N.Y.S.2d 598, is also distinguishable from the instant case. There, the New York court held that a patient who alleged negligence on the basis that she was injected with food grade silicone instead of medical grade silicone could assert application of the foreign body doctrine to toll the statute of limitations. (*Id.,* at p. 599.) However, the court expressly distinguished the situation where a plaintiff, as here, does not allege that the wrong type of silicone was injected. (*Ibid.*)[8] We are accordingly not persuaded that *Mateo* supports Ms. Hills here.

Our research has revealed that no California cases have specifically addressed the issue of whether a substance placed in a patient's body with the patient's knowledge and consent is entitled to "foreign" status sufficient to come within the meaning of the foreign body tolling provision. However, although earlier cases have reached differing conclusions as to when an action commences, a common thread running through all of them is that the cause of action was based on a surgeon's alleged negligence in *failing to remove* the foreign object and not, as here, negligence in introducing the substance into the body in the first place. (E.g., *Huysman* v. *Kirsch, supra,* 6 Cal.2d 302 [failure to remove rubber drainage tube after surgery]; *Trombley* v. *Kolts* (1938) 29 Cal.App.2d 699 [85 P.2d 541] [failure to remove skin clip after surgery]; *Ehlen* v. *Burrows* (1942) 51 Cal.App.2d 141 [124 P.2d 82] [failure to remove all broken roots upon extraction of tooth]; *Pellett* v. *Sonotone Corp.* (1942) 55 Cal.App.2d 158 [160 P.2d 783, 160 A.L.R. 863] [failure to remove plaster of Paris from patient's ear].)[9]

The court in *Pellett* stated: "It is the general rule that in tort actions the statute of limitations commences to run from the date of the act causing the injury. There is a recognized exception to this rule in California, which is:

"That if a foreign substance is negligently left in the human body by a defendant, the statute of limitations does not commence to run until the

---

[8]The court in *Mateo* stated: "This contention overlooks the fact that Mrs. Mateo has alleged that the wrong type of silicone, i.e., 'food grade' instead of 'medical grade', was injected, and that the use of 'food grade' silicone was contrary to the accepted and established medical standards at the time. Surely such an allegation gives rise to the possible application of the 'foreign objects' doctrine which establishes that the time limitation is to commence at that point in time when the patient could reasonably have discovered the malpractice. . . ." (*Mateo* v. *Rich, supra,* 446 N.Y.S.2d 598, 599, citation omitted.)

[9]Our review of the cases from other jurisdictions also shows that the foreign body doctrine is limited to actions based on failure to remove an object or substance. (See Annot., When Statute of Limitations Commences to Run Against Malpractice Action Based on Leaving Foreign Substance in Patient's Body (1976) 70 A.L.R.3d 7, and cases collected therein.)

plaintiff has discovered the fact that a foreign substance has been left in his body or through the use of reasonable diligence should have discovered it." (*Id.*, at p. 160, citations omitted.) We have found nothing to persuade us that the doctrine was intended to cover situations such as the case before us where a substance was intentionally introduced into a patient's body.

In addition, the foreign body tolling provision contained in section 340.5 provides the three-year period may be tolled only for a foreign body "*which has no therapeutic or diagnostic purpose . . . .*" (Italics added.) The medical records contained in the clerk's transcript reveal that Ms. Hills sought silicone treatment in 1966 "because her breasts lost some of their fullness." To extend the foreign body doctrine to a substance which was introduced intentionally for a therapeutic purpose would undermine the clear legislative intent to restrict the foreign body exception to situations where the foreign substance was *unintentionally* left in a patient's body.[10] Accordingly, Ms. Hills' action was not tolled by the foreign body doctrine.

## CONCLUSION

The conclusions we reach in this case are compelled by the provisions of Civil Code section 340.5. Nonetheless, we recognize that section can produce harsh results in certain situations. Frequently, a patient will begin experiencing physical symptoms many years before medical science can pinpoint the cause. Yet if it turns out medical malpractice indeed produced those symptoms, the injured patient will be without recourse since the statute of limitations will have begun running with the initial onset of symptoms. Accordingly, relief may be denied to seriously injured patients even though they diligently pursued their rights as soon as current medical science permits.

This result in turn may encourage premature filing of medical malpractice lawsuits, many of which will ultimately prove to be without merit. At this point, people experiencing physical discomfort or other symptoms which conceivably could be attributed to previous medical services have an incentive to file suit before ascertaining the true cause of those symptoms. Otherwise they run the risk any malpractice claim will expire while they seek to find out what is making them hurt. Predictably, many of these premature actions will be dismissed when the plaintiffs ultimately learn their symptoms did not result from negligent medical care, after all. Nonetheless even these

---

[10]We note, furthermore, that Ms. Hills knew of the existence of the silicone from the beginning. Indeed she paid Dr. Aronsohn to inject that substance into her breasts. Accordingly, even if deemed a "foreign body" the silicone had been "discovered" by Ms. Hills in 1966 and the statute of limitations began to run at that time as to the foreign body exception. (*Pellett* v. *Sonotone Corp., supra,* 55 Cal.App.2d 158, 160.)

suits will have imposed costs on courts and litigants during the time they proceeded through the process.

We are not altogether certain the Legislature intended to produce these consequences. But the language it enacted in Code of Civil Procedure section 340.5 does just that. This court, of course, has no choice but to apply that language and affirm the summary judgment granted below.

DISPOSITION

The judgment is affirmed.

Thompson, J., and Merrick, J.,* concurred.

A petition for a rehearing was denied March 29, 1984.

---

*Assigned by the Chairperson of the Judicial Council.