[No. B026682. Second Dist., Div. Three. Feb. 8, 1988.]

■THERESA M. STEINGART et al., Plaintiffs and Appellants, v. JOHN S. WHITE, JR., et al., Defendants and Respondents.

408

COUNSEL

Ruston & Nance and Keith D. Taylor for Plaintiffs and Appellants.

Wood, Lucksinger & Epstein and Julius Wachs for Defendants and Respondents.

OPINION

KLEIN, P. J.—Plaintiffs and appellants Theresa M. Steingart (Steingart) and Robert A. Steingart (the Steingarts) appeal an order granting summary judgment in favor of defendants and respondents John S. White, Jr., M.D., and John S. White, Jr., M.D., Inc. (White).

Because the trial court erroneously applied the medical malpractice statute of limitations found in Code of Civil Procedure section 340.5 (section 340.5) to Steingart's action against White, the judgment must be reversed.

FACTUAL AND PROCEDURAL BACKGROUND

■ "Inasmuch as this case reaches us on appeal from a summary judgment in favor of [White], we need only determine whether there is a reasonable *possibility* that [Steingart] may be able to establish [their] case. . . . [A] defendant . . . must conclusively negate a necessary element of plaintiff's case or establish a complete defense, and thereby demonstrate that under no hypothesis is there a material factual issue which requires the process of a trial. [Citations.]" (*Tresemer* v. *Barke* (1978) 86 Cal.App.3d 656, 661-662 [150 Cal.Rptr. 384, 12 A.L.R.4th 27].)

Steingart's deposition and the affidavits filed by White in support of his motion for summary judgment established that in 1982, Steingart, a registered nurse, noticed a lump in her right breast. In February, Steingart arranged an appointment with White because her regular gynecologist, codefendant Joseph A. Oliver, M.D. (Oliver), was not available. On February 12, 1982, White, who shared office space and receptionist services with Oliver, examined Steingart, diagnosed the lump as fibrocystic disease which is characterized by fluid filled cysts and advised Steingart not to be concerned.

However, Steingart thought the lump was "very nodule and hard" and she "had a feeling of cognitive dissonance" about White's diagnosis. Although she asked White to order a biopsy, White said she did not need one. Steingart "had some question in [her] mind" about White's treatment and, approximately three months later, made "a special appointment [with Oliver] to check out the lump which had not gone away." Oliver agreed with White's diagnosis but ordered a mammogram "to be on the safe side" which verified the doctors' opinions. Steingart found the negative result of the mammogram "very reassuring."

Steingart continued to treat with Oliver until he neglected to examine her breasts on one of her visits.

At her deposition Steingart stated, "Up until that time, I always had the impression that [Oliver] was doing a good job of examining that particular lump and keeping track of it, but after that visit, I knew that he wasn't."

In 1984, shortly after the visit on which Oliver failed to examine her breasts, Steingart's internist, Dr. Kathleen R. DeRemer (DeRemer), ordered a second mammogram and the results again were negative.

Steingart noticed no change in the lump between 1982 and 1985. However, two or three months after her last visit with Oliver, and after DeRemer had caused the second mammogram to be performed, Steingart noticed a change in the contour of the upper outer quadrant of her right breast. The lump was still present at that time but did not seem any larger.

Steingart immediately called DeRemer who referred her to Dr. Newman (Newman). In April of 1985, Newman performed a lumpectomy on Steingart and that same day advised Steingart she had "Stage II" breast cancer. Steingart underwent a radical mastectomy involving her right breast and 18 auxiliary lymph nodes.

On March 24, 1986, more than four years after White's single examination of Steingart, but within one year of the diagnosis of breast cancer, the Steingarts filed their complaint for medical malpractice against White, Oliver and DeRemer.[1] The first amended complaint alleged each doctor had "failed to discover, treat and manage a condition [Steingart] had, more

---

[1] Neither Oliver nor DeRemer is a party to this appeal.

particularly described as 'infiltrating differentiated adenocarcinoma,' also known as breast cancer, and further failed to warn of the risks of such cancer." The Steingarts further alleged the doctors negligently induced her to forego treatment and refused her direct request for a biopsy.

Although neither the trial court's order granting summary judgment in favor of White nor a transcript of the hearing is before us, the moving papers in the trial court and the manner in which the parties have briefed the case on appeal indicate the lower court grounded its ruling on the medical malpractice statute of limitations found in section 340.5.

## CONTENTIONS

The Steingarts contend the trial court erred in granting summary judgment because: (1) White's concealment of Steingart's injuries tolled the statute of limitations; (2) the trial court erroneously looked to the date of treatment rather than date of injury in applying section 340.5; and (3) Steingart neither knew, nor reasonably should have known, of White's asserted malpractice until the diagnosis of her cancer.

## DISCUSSION

### 1. *Standard of review.*

"The summary judgment procedure, inasmuch as it denies the right of the adverse party to a trial, is drastic and should be used with caution. [Citation.] Summary judgment is properly granted only when the evidence in support of the moving party establishes that there is no issue of fact to be tried. [Citations.] [¶] 'The moving party bears the burden of furnishing supporting documents that establish that the claims of the adverse party are entirely without merit on any legal theory.' [Citation.] 'The affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of summary judgment should be resolved against granting the motion.' [Citation.] '. . . [I]ssue finding rather than issue determination is the pivot upon which the summary judgment law turns.' [Citation.]" (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35-36 [210 Cal.Rptr. 762, 694 P.2d 1134].)

### 2. *The medical malpractice statute of limitations.*

"Prior to 1936, California courts applied a strict statute of limitations in medical negligence cases. Under former section 340, subdivision 3, a mal-

practice action was barred if not brought within one year of the date of injury. In 1936, our Supreme Court initiated the 'discovery rule' exception in order to mitigate the harsh effect of this statute. [Citation.]" *Wallace* v. *Hibner* (1985) 171 Cal.App.3d 1042, 1046 [217 Cal.Rptr. 748].) The discovery exception tolled the one-year statute of limitations for personal injury or death in medical malpractice cases until the plaintiff actually discovered both the injury and its negligent cause or, through the exercise of reasonable diligence, could have done so. (*Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93, 96-97 [132 Cal.Rptr. 657, 553 P.2d 1129]; former Code of Civ. Proc., § 340, subd. 3.) Under this rule, the running of the statute might be deferred indefinitely.

In order to reduce the number of "long tail" medical malpractice lawsuits, in 1970 the Legislature enacted section 340.5 which "retained the former one-year limitations period, but circumscribed it with an outside period of four years from the date of plaintiff's 'injury,' irrespective of whether its negligent cause had or should have been discovered" (*Brown* v. *Bleiberg* (1982) 32 Cal.3d 426, 432 [186 Cal.Rptr. 228, 651 P.2d 815]), unless the physician had " ' "failed to disclose any act, error, or omission upon which such action is based and which is known or through the use of reasonable diligence should have been known to him [*sic*]." ' " (*Ibid.*)

In 1975, the Legislature amended section 340.5 to provide, in pertinent part: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, . . ."

■ Thus, section 340.5 presents two time bars within which a plaintiff claiming medical malpractice must file a complaint: within one year after said plaintiff discovers, or should have discovered, the injury and within three years after the injury, unless one of the three enumerated exceptions applies. (*Hills* v. *Aronsohn* (1984) 152 Cal.App.3d 753, 758 [199 Cal.Rptr. 816].)

3. *Injury to commence the statute of limitations means damaging effect of the wrongful act.*

After concluding section 340.5 establishes two hurdles, not one, to the timely maintenance of a medical malpractice claim, the *Hills* court recognized injury as a key word in the statute and that "there are four possible ways in which the term injury might be defined." (*Hills, supra,* 152 Cal.App.3d at p. 758.) *Hills* held "the event which activates the three-year limitations period is the moment the plaintiff discovers the harm caused by the alleged negligence. Or, in the words of the court in *Larcher* [v. *Wanless* (1976) 18 Cal.3d 646 (135 Cal.Rptr. 75, 557 P.2d 507)], the period is activated on the date of the damaging effect of the wrongful act rather than on the date of the act itself." (*Id.,* at p. 762.)

In a footnote, the *Hills* court went on to observe: "We do not see how the rule can be otherwise. In a medical malpractice action, where an element of the cause of action is damages, a cause of action cannot accrue until the plaintiff has suffered some legally compensable injury. To adopt a rule that the statute begins to run on the date of the alleged negligence would mean that a plaintiff is denied all possibility of recovery simply because the injury did not manifest itself until sometime after three years from the date of the negligent act. Indeed, where the injury does not manifest itself within three years of the negligent act, a plaintiff would have no opportunity whatsoever to recover since the three-year period would effectively bar the action before the cause of action even accrued." (*Id.,* at p. 762, fn. 7.)

In *Larcher* v. *Wanless* (1976) 18 Cal.3d 646 [135 Cal.Rptr. 75, 557 P.2d 507], our Supreme Court noted the drafters of the 1970 version of section 340.5 rejected a draft which commenced the four-year limitation period with the " 'alleged wrongful act' " (*id.,* at p. 655), and decided instead to tie the statute to " 'injury,' a word of art which might refer to an event occurring some time after the commission of a 'wrongful act.' " (*Id.,* at pp. 655-656.) In a footnote to the quoted material, the *Larcher* court stated: "Thus the word 'injury,' as used in section 340.5 . . . , seems clearly to refer to the damaging effect of the alleged wrongful act and not to the act itself. As we noted in *Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200 . . . , 'The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence.' *Budd* was an attorney malpractice case, but its rationale seems equally applicable to medical malpractice. ■ Until the patient 'suffers appreciable harm' as a consequence of the alleged act of malpractice, he cannot establish a cause of action. ' "It follows that the

statute of limitations does not begin to run against a negligence action until some damage has occurred." ' [Citations.]" (*Id.,* p. 656, fn. 11.)

*Brown* affirmed this definition of injury, noting "[p]laintiff's 'injury' occurred at the point at which 'appreciable harm' was first manifested. [Citations.]" (*Brown* v. *Bleiberg, supra,* 32 Cal.3d at p. 437, fn. 8.) " 'Wrongful act' and 'injury' are not synonymous. [Citations.] The word 'injury' signifies both the negligent cause and the damaging effect of the alleged wrongful act and not the act itself. [Citation.] The date of injury could be much later than the date of the wrongful act where the plaintiff suffers no physical harm until months or years after the wrongful act. [Citation.] [Fn. omitted.]" *Steketee* v. *Lintz, Williams & Rothberg* (1985) 38 Cal.3d 46, 54 [210 Cal.Rptr. 781, 694 P.2d 1153].)

Thus, it is the date of the injury, not the date of the negligence, which commences the running of the three-year period within which a malpractice action must be filed under section 340.5.

4. *Application here.*

a. *The three-year limitation.*

■ White contends Steingart's allegation of misdiagnosis of cancer must be accepted as true and based thereon, argues Steingart must have suffered an injury—cancer as manifested by the lump—at the time White examined her on February 12, 1982. Thus, White urges the three-year outside limitation began on that date.

We cannot accept White's view of the matter. Applying the well-settled definition of injury set forth in the cases cited *ante* to the facts here, it must be concluded Steingart suffered no damaging affect or appreciable harm from White's asserted neglect until Newman discovered her cancer in April 1985. Her complaint was therefore timely with respect to the three-year limit.

Nothing in *Hills,* relied upon by White, compels a contrary result. In that case the plaintiff, Hills, received intrabreast silicone injections in 1966. In March of 1974 she "noticed lumps and experienced soreness in her breasts." (*Hills* v. *Aronsohn, supra,* 152 Cal.App.3d at p. 756.) That same year, these symptoms were diagnosed as " 'typical . . . of what one sees following

silicone injection.' " (*Id.,* at p. 756.) In April of 1975 and again in January of 1977, Hills was diagnosed as "suffering from silicone granulomatosis due to silicone injections." (*Ibid.*)

Hills underwent a bilateral subcutaneous mastectomy shortly after the last diagnosis and filed a complaint for malpractice on March 1, 1978. While the *Hills* court found there existed a triable issue of fact as to when, under the one-year section 340.5 limitation, Hills discovered the negligent cause of the injury, the "damaging effect of the alleged malpractice" had been suffered more than four years before filing of the complaint when she first consulted a physician about the soreness and lumps and was advised the symptoms were related to the silicone injections. Since Hills could not clear both hurdles of section 340.5, her complaint was barred.

There is a significant difference between the *Hills* fact situation and the one here. Hills did not become aware of her injury at the time of her mastectomy, but at the time of the medical examination in 1974. Not only did she know of the injury at that time, but she also became aware of its relationship to silicone because her physician advised her the soreness and lumps were typical for persons receiving like injections.

White would have us focus only on Hills's soreness and lumps and consider Steingart similarly, because she also had a lump in her right breast in 1982. However, although Steingart knew about the lump at the time White examined her, such a condition is not a clear indication of injury, either damaging effect or appreciable harm. Unlike Hills, Steingart was not advised the lump was the result of any earlier treatment. On the contrary, she was told repeatedly the lump was nonthreatening.

Under these circumstances, we cannot equate Steingart's lump with injury. She suffered no injury until her cancer had been diagnosed. At that time, the three-year period commenced. Because the Steingarts' filed their complaint within three years of receipt of that information, the complaint cannot be barred by application of the three-year limit in section 340.5.

b.   *The one-year limitation.*

In order for the one-year limitation period to be triggered, a plaintiff must be aware of both the injury and its negligent cause. White argues Steingart's admitted misgivings in February 1982 about the fibrocystic disease diagnosis started the one-year period because she then knew or,

through the use of reasonable diligence, should have known, of the malpractice. Again, we disagree.

Under the facts presented, there remains at minimum a triable issue of fact as to whether Steingart exercised reasonable diligence after the purported misdiagnosis. Reasonable minds could easily conclude Steingart did everything within her power to ascertain what, if any, illnesses she had after receiving White's initial diagnosis. There can be no factual dispute that Steingart discovered her injury when Newman diagnosed and, shortly thereafter, operated upon Steingart's cancer.

Because the Steingarts' complaint was filed within one year of that date, it must be deemed filed under the one-year prong of section 340.5.

### c. *Avoidance of inequitable result otherwise compelled by White's analysis of section 340.5.*

■ Application of White's interpretation of section 340.5 to the facts of this case has the untenable result that Steingart would never have been able to assert successfully a professional negligence action against White. Indeed, at oral argument, White's counsel conceded the Steingarts' complaint would have been premature and vulnerable to a summary judgment motion based upon lack of any damages before discovery of the breast cancer, and barred by the three-year limit if filed afterwards.

White urges this consequence is merely one of the frequent "harsh results" which obtain under any limitation period, citing *Gutierrez* v. *Mofid* (1985) 39 Cal.3d 892, 898-899 [218 Cal.Rptr. 313, 705 P.2d 886]. Although *Gutierrez* recognized the social benefit derived from terminating actions after passage of the allotted time within which to sue even though the inaction might be blamed upon the later neglect of another, it did not address a situation in which a plaintiff could not, at any time, have asserted a claim for professional neglect. Avoidance of this inability speaks convincingly for the correctness of the present result.

### CONCLUSION

The three-year bar of section 340.5 does not apply to the present complaint because Steingart's injury—the damaging effect or the appreciable

harm arising out of White's neglect—remained unknown until cancer had been diagnosed. As the complaint was filed within three years of Newman's diagnosis, it must be deemed timely under the three-year limitation.

Similarly, because there is no evidence from which the trial court could have concluded beyond dispute Steingart knew, or should have known, of her cancer at any time before it had been discovered by Newman, the one-year limitation period cannot operate as a barrier to the complaint. Accordingly, the grant of summary judgment must be reversed.

### DISPOSITION

The order granting summary judgment is reversed. White to bear costs on appeal.

Arabian, J., and Croskey, J., concurred.