[No. D013269. Fourth Dist., Div. One. Mar. 27, 1991.]

[As modified Apr. 25, 1991.]

MARRIAGE AND FAMILY CENTER et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
CAROLINE De POTTEL, Real Party in Interest.

1648

COUNSEL

Jaret, Caudill & Kuehn, James C. Chaney and Jayne F. Monahan for Petitioners.

No appearance for Respondent.

David D. Miller for Real Party in Interest.

OPINION

FROEHLICH, J.—Charles E. Hansen (Dr. Hansen) and Susan Hansen, who are medical practitioners, and their medical business association, Marriage and Family Center (Center) (hereinafter collectively defendants), sought summary judgment based upon the contention that the complaint filed by Caroline De Pottel (hereinafter plaintiff)[1] for medical malpractice was clearly barred by the special statute of limitations provisions of Code of Civil Procedure[2] section 340.5. The trial court denied the motion, finding a triable issue of fact to be the time of occurrence of the effective damage such as to trigger commencement of the statute. Defendants' petition for review is authorized by section 437c, subdivision (*l*). (See also *Leyva* v. *Superior Court* (1985) 164 Cal.App.3d 462, 468 [210 Cal.Rptr. 545].)

█ The denial or granting of a motion for summary judgment does not involve exercise of discretion. If the pleadings and evidence before the court demonstrate that there is no triable issue of fact, the denial of the motion is an error in law. (*Whitney's at the Beach* v. *Superior Court* (1970) 3 Cal.App.3d 258, 266 [83 Cal.Rptr. 237].) We therefore review the pleadings, moving and responding papers presented to the trial court in order to determine whether they establish the existence of the triable issue of fact found by the trial court.

FACTS

Plaintiff's injuries are psychological and emotional, resulting from improper treatment received by her from personnel of the Center. The entire thrust of Center's summary judgment motion is the bar of the statute of limitations. There is no dispute, therefore, at this stage in the proceedings,

---

[1] For purposes of clarity, the parties to this original proceeding will be referred to by their lower court's designations.

[2] All statutory references are to the Code of Civil Procedure.

as to the facts of plaintiff's mistreatment, and we accept them as asserted by plaintiff. The controlling facts are derived from detailed medical reports made by plaintiff's presently treating psychiatrist, Dr. Morris. Dr. Morris commenced his treatment of plaintiff in April of 1985, and the record of his treatment and diagnosis is contained in a letter report to the Patient Management System dated May 24, 1985, and a letter report to the Board of Medical Quality Assurance dated April 7, 1989. It is to be noted that neither of these reports was prepared for purposes of litigation, and the 1985 report was prepared some years before the complaint was filed. In that these reports are not in any way controverted, they constitute prima facie substantial evidence; because of their timing and nature we are inclined to accord them perhaps more than usual credibility.[3]

Plaintiff was sexually abused by her father when she was a child. This experience caused her to be emotionally traumatized, and she became highly vulnerable to subsequent sexual exploitation and abuse by other men. She sought treatment, as a young adult, for her depressive neurosis. Her first encounter with a therapist resulted in their engaging in sexual intercourse. She later sought treatment at the Center, retaining the services of Dr. Hansen, and again was induced to have sexual intercourse with her therapist. This conduct is described by Dr. Morris as "sexual abuse," characterized by him as unethical,[4] and identified as a contributing cause to plaintiff's continued emotional difficulties. Treatment by a successor psychiatrist was beneficial, and plaintiff recovered to some extent from her "repression memories of her sexual abuse by her father, her first therapist, H., [and Dr. Hansen]," but she could file no complaint at that time because "she felt too guilty and irrationally responsible for these experiences."

When Dr. Morris first commenced treating plaintiff in 1985 he reported her sexual abuse by her father, Dr. H., and Dr. Hansen, and described the emotional damage which had resulted to plaintiff. She was "very frightened by being in therapy again." Her capacity to function effectively in her job was "diminished because of . . . repressed memories of her sexual abuse."

---

[3] We also, of course, have read and considered the other evidentiary material before us, such as excerpts from the deposition of plaintiff and her interrogatory answers, as well as admissions of fact contained in her unverified complaint. We highlight plaintiff's current physician's medical reports because they reflect most clearly the crucial facts upon which our resolution of the case depends.

[4] See *Simmons* v. *United States* (9th Cir. 1986) 805 F.2d 1363, 1364 for a detailed discussion and analysis of the "transference phenomenon" which occurs between therapist and patient during a successful treatment, resulting in the patient's becoming highly subject to the direction and suggestion of the therapist. The court concludes, citing authority from scientific journals, that "[w]hen the therapist mishandles transference and becomes sexually involved with a patient, medical authorities are nearly unanimous in considering such conduct to be malpractice." (*Id.* at p. 1365.)

She was vulnerable to crying spells and episodes of anxiety. Dr. Morris reported that plaintiff was intelligent with clear thought processes and without delusional thinking, and that she had insight into her problems, but that "this insight has not protected her from repeating the trauma in sexual relations with [two] previous therapists." Dr. Morris predicted that because of the "degree of character pathology and preexisting trauma," plaintiff's future necessary treatment would be measured in years, not months.

The complaint was filed in July of 1989. The malpractice of the defendants was perpetrated sometime in 1981. Dr. Morris initially diagnosed and treated plaintiff in April and May of 1985. Plaintiff contends as to the defense of the statute of limitations that although she was well aware of the sexual incidents at the time they occurred and was cognizant of her subsequent traumatized emotional state, she was unable to "realize that not only had she been injured, but that [d]efendant Hansen was the cause of her injury." Dr. Morris, in his 1989 report, explains that throughout his four years of treatment of plaintiff she had become increasingly aware of Dr. Hansen's betrayal of trust, but "only . . . relatively recently [had she] been able to see these events more objectively, leading to her decision to file this complaint and to explore the possibility of personal injury litigation . . . ."[5]

## The Law and Application to This Case

All parties acknowledge that all of the defendants are "health care providers." The statute of limitations for actions against a health care provider for professional negligence is contained in section 340.5, which in relevant part reads as follows:

"In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person. . . ."

There is no contention by the plaintiff that any of the three tolling exceptions of the statute applies: i.e., this is not a "foreign body" case, there was no intentional concealment of anything by Dr. Hansen, and there is no allegation of any actionable fraud or misrepresentation on his part.

---

[5] The "complaint" referred to in Dr. Morris's report was the complaint to the Board of Medical Quality Assurance, rather than the complaint in this litigation.

■ The one-year period commences to run not simply when the plaintiff is or should be aware of her injury, but also requires that she understand the negligent cause of the injury. (See *Hills* v. *Aronsohn* (1984) 152 Cal.App.3d 753, 759 [199 Cal.Rptr. 816].) There is some evidence tending to establish that plaintiff, although well aware of her injured psychological state, was not able personally to relate that problem with the actions of Dr. Hansen until sometime in 1989, within one year of the date of her complaint. Summary adjudication on the basis of the one-year statute cannot, therefore, be achieved.

We turn to the three-year statute. Previous appellate analysis of the history of section 340.5 gives insight into the purpose of the three-year statute. The original one-year statute was judicially interpreted as not commencing to run until the plaintiff discovered (or reasonably should have discovered) not only the injury but its negligent cause. Under this rule the running of the statute could be deferred indefinitely. The amendments which eventually resulted in our present statute were designed to put an outside cap on the commencements of actions for medical malpractice, to be measured from the date of the injury, regardless of whether or when the plaintiff discovered its negligent cause. (The history of the section is set forth in *Larcher* v. *Wanless* (1976) 18 Cal.3d 646, 654-656 [135 Cal.Rptr. 75, 557 P.2d 507]; *Brown* v. *Bleiberg* (1982) 32 Cal.3d 426, 431-433 [186 Cal.Rptr. 228, 651 P.2d 815]; *Steingart* v. *White* (1988) 198 Cal.App.3d 406, 411-412 [243 Cal.Rptr. 678].)

■ The key determination in application of the three-year statute is the date of "injury." The Supreme Court in *Larcher* v. *Wanless, supra*, 18 Cal.3d at pages 655-656, and footnote 11, noted that "injury" is a word of art which refers to the damaging effect of the negligence rather than the act of negligence itself, and thus often refers to "an event occurring some time after the commission of a 'wrongful act.'" The Supreme Court subsequently elaborated, stating that a plaintiff's injury occurs "at the point at which 'appreciable harm' was first manifested." (*Brown* v. *Bleiberg, supra*, 32 Cal.3d at p. 437, fn. 8; see also *Bispo* v. *Burton* (1978) 82 Cal.App.3d 824, 831 [147 Cal.Rptr. 442].)

It is the definition of the concept of "manifestation" of an injury which has given the courts of appeal, in our opinion, difficulties. It is, of course, an elementary proposition that a cause of action does not arise until "damage" is suffered. (See Prosser & Keeton on Torts (5th ed. 1984) § 30, pp. 165-167.) It would be difficult to conceive, in the usual case, of damage being suffered without an awareness on the part of the damaged person. The word "manifest" as used by our courts indeed suggests not only actual damage but that the damage has made itself known in some outward fashion.

This has given rise, in recent opinions, to a suggestion that for the three-year statute to commence not only must actual damage have been done, but plaintiff must have been made aware of the existence of the damage. We review the significant recent decisions before attempting to arrive at a conclusion in this case.

*Hills* v. *Aronsohn, supra,* 152 Cal.App.3d 753, involved damage in the form of breast cancer, resulting from a negligent silicone injection. The patient experienced pain and discomfort soon after the silicone injection, but was not aware either of the cancerous state of her breast or the negligent cause thereof until the later date when she sought alternative medical advice. The court postulated that "injury" as set forth in the statute could be (1) the date the negligent act occurred, (2) the time the patient observes some significant physical manifestation of harm, (3) the time the patient is aware both of the manifestation of her injury and its negligent cause, or (4) the date upon which ultimate harm (in this case the cancer operation) occurred. (*Id.* at p. 759.)

The court in *Hills* v. *Aronsohn, supra,* 152 Cal.App.3d 753, selected alternative (2), above, as the correct definition; it concluded the plaintiff became aware of her "injury" when she first experienced pain and discomfort; and the fact that she was unaware of the negligent cause or the exact nature and extent of the injury was of no moment insofar as the three-year statute was concerned. The court then stated the rule as follows:

"[T]he event which activates the three-year limitations period is the moment the plaintiff discovers the harm caused by the alleged negligence. Or, in the words of the court in [*Larcher* v. *Wanless, supra,* 18 Cal.3d 646], the period is activated on the date of the damaging effect of the wrongful act rather than on the date of the act itself. [Citation.] Once the damaging effect of the alleged wrongful act is apparent, the statute is activated." (152 Cal.App.3d at p. 762, fn. omitted.)

We turn next to *Steingart* v. *White, supra,* 198 Cal.App.3d 406. Here the patient was aware of a lump in her breast, but was told by her physician it was benign. At a later date a different physician diagnosed the lump as a malignancy which required a radical mastectomy. The *Steingart* court, citing *Hills* v. *Aronsohn, supra,* 152 Cal.App.3d 753, agreed that the three-year statute does not commence until the date of the "injury," but distinguished the *Hills* result by concluding Steingart had no "injury" until her malignancy was diagnosed as cancer. She knew about the lump in her breast, but until her later examination "such a condition [was] not a clear indication of injury, either damaging effect or appreciable harm. . . ." (*Steingart* v. *White, supra,* 198 Cal.App.3d at p. 415.) We interpret the rule

of this case to be that although actual damage may have been done to the plaintiff, no "injury" occurs until there is some evident harm or detrimental effect.

The third case in our review is *Rose* v. *Fife* (1989) 207 Cal.App.3d 760 [255 Cal.Rptr. 440], which involved injury from a defective birth control device (IUD) implanted medically in the plaintiff. The device was first inserted in 1978, then replaced in 1982. In March 1983 plaintiff was hospitalized with a pelvic infection, her then treating physicians advising plaintiff that the cause of the infection was the IUD. Plaintiff did not become aware of the danger from use of the specific IUD she had used until October 1985. Suit was filed in February 1986. Because the court found the manifestation of injury to have been March 1983, it concluded plaintiff had met the three-year requirement by filing in February 1986. In discussing the three-year period, the court stated: "The three-year period begins to run when the plaintiff discovers the harmful effect, i.e., the physical manifestation of the wrongful act. . . ." (*Id.* at p. 768.)

The difficulty with these cases is that they (with the possible exception of *Steingart* v. *White, supra,* 198 Cal.App.3d 406) suggest there is a correlation between manifestation of damage and the plaintiff's "discovery" of the damage. We cannot agree with this suggestion, and find the facts of this case to be particularly illuminating for the purpose of examining the matter. We conclude that damage is "manifested" for purposes of commencing the three-year period when it has become evidenced in some significant fashion, whether or not the patient/plaintiff actually becomes aware of the injury. We accept the *Steingart* proposition that severe damage which does not show itself (hidden cancer, for instance) is not "injury" until it is found by diagnosis. It does not follow, however, that damage which has clearly surfaced and is noticeable is not "injury" until either the plaintiff or her physician recognizes it.

We are confirmed in this analysis by a review of the critical terms of the statute. The one-year period commences when the "plaintiff discovers . . . the injury." The three-year period, however, commences simply upon the "date of injury." That nothing beyond the mere existence of the "injury" is to be required is emphasized by the statement that the three-year period may be extended only by three specific exceptions, none of which relates to the plaintiff's discovery of her condition (absent fraud or concealment by the defendant).

The distinction we raise may not have been important in the cases discussed above. It is crucial in our case, however. Giving credence to the plaintiff's evidence, one could conclude that she was unaware of the damage

resulting from Dr. Hansen's sexual abuse until late in her treatment by Dr. Morris. While not completely clear, Dr. Morris's reports can be read as suggesting that while *he* understood as early as 1985 the damage which had been done to plaintiff, he did not effectively advise her of it until a much later date. Assuming these facts, we have the unique situation of plaintiff's damage being most manifest—indeed being recognized by her physician—but not being recognized or understood by the plaintiff.[6]

We therefore conclude that there can be no dispute, under the admitted facts of the case, that the three-year statute has run; the superior court therefore should have granted summary judgment in favor of petitioners.

## DISPOSITION

Let the peremptory writ issue directing the superior court to vacate its order denying the defendants' motion for summary judgment, and to enter instead an order granting the motion for summary judgment. Defendants are entitled to costs.

Wiener, Acting P. J., and Nares, J., concurred.

---

[6] Compare our very recent decision in *Mason* v. *Marriage and Family Center, ante,* page 537 [279 Cal.Rptr. 51] in which there was no evidence of psychological damage from the psychiatrist's sexual abuse until some many months after the abuse occurred.