Filed 12/21/20 Certified for Publication 1/8/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MICHAEL FILOSA,<br><br>   Plaintiff and Appellant,<br><br>v.<br><br>RAVI ALAGAPPAN et al.,<br><br>   Defendants and Respondents. | A156412<br><br>(Contra Costa County<br>Super. Ct. No. MSC17-01396) |

In this medical malpractice action, plaintiff Michael Filosa alleges defendants Ravi Alagappan and Bay Radiology San Ramon negligently failed to diagnose a brain tumor when he underwent an MRI in 2010.[1] The trial court granted summary judgment to defendants on the ground Filosa's complaint, filed in 2016, is barred by the statute of limitations. (Cod. Civ. Proc., § 340.5.)[2] We conclude there is a triable issue of fact as to the date of

---

[1] The complaint named as defendants CDI, CDI d/b/a/ Insight Imaging East Bay, Insight Imaging East Bay, Bay Radiology San Ramon, and Ravi Alagappan. CDI, CDI d/b/a/ Insight Imaging East Bay, and Insight Imaging East Bay were dismissed from the action, leaving as defendants Alagappan and Bay Radiology San Ramon, on whose behalf the motion for summary judgment was made. References to defendants are to Alagappan and Bay Radiology San Ramon.

[2] All statutory references are to the Code of Civil Procedure.

both Filosa's injury and his discovery of the injury, and accordingly we shall reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Evidence in the summary judgment record establishes the following facts. Filosa began to complain of headaches in 2004 or 2005, and over a period of years they became steadily worse. By 2010, the headaches were constant. Filosa described them as involving a feeling of pressure or constant discomfort—"on a scale of 1 to 10, that was like a 5 all the time" and then would "spike up based upon acute episodes." In 2010 during one such "acute episode," he suffered blind spots, blurry vision, and twitching of his left eyelid and lip, and his doctor ordered an MRI.

The MRI took place in September 2010 at Insight Imaging. Dr. Alagappan, a radiologist, interpreted the results, and did not detect any abnormalities.

Filosa's headaches continued to worsen after 2010. Specifically, Filosa testified, between 2010 and 2014 the headaches continued to become "more intense, more debilitating, and more different types," sometimes involving pulsing, sometimes throbbing, and sometimes sharp pain.

During this same period, Filosa faced other challenges. In April 2011, Filosa separated from his wife, who had recently been diagnosed with mental health issues, and assumed full custody of his three daughters. He reported to a doctor that he felt overwhelmed, that he woke in the middle of the night with his mind racing, that when he awoke in the morning he did not feel refreshed, and that he had trouble concentrating. In June of the same year, he reported that his depression was getting worse, that he had low energy, he had difficulty focusing and concentrating, and his job performance was poor.

He was seeing a mental health professional and began taking antidepressants, which brought some relief.

Filosa's symptoms affected his performance at work, and he took two medical leaves of absence, one in July 2011, and one in early 2012. Many days he was also late arriving at work or left work early. His medical records indicate that he was receiving treatment for depression at the time of the 2011 leave of absence and that the 2012 leave of absence was due to stress and anxiety. He described the symptoms that left him unable to perform in 2012 and 2013 as including "brain fog—[for] lack of [a] better word—severe headaches and migraines, a myriad of different types of headaches that were both debilitating as well as scary, such as the feeling of . . . electric shock through my brain or a lighting bolt, . . . [and] constant pressure [in my head], like it felt like it was going to explode from physical pressure." He also described experiencing vision problems, eye strain, extreme fatigue, and an inability to concentrate. Filosa's employer demoted him for performance problems in October 2012, although his salary remained the same. Filosa was concerned that, due to his headaches, fatigue, grogginess, and vision problems, he was not able to do his job as effectively as he had done previously. He was put on a performance plan and given the opportunity to improve his work performance sometime in 2013.

Filosa's medical records show that in July 2013 he was feeling "[r]un down" in the afternoons, and he continued to experience depression.

Concerned about his symptoms, Filosa asked a doctor around 2013 whether he might have a brain tumor. He described the inquiry as "a macro observation or question, just a shot in the dark." His doctor dismissed the suggestion, saying nothing in Filosa's blood work indicated he had cancer and

3

that he had already had an MRI that was negative. The doctor suggested the symptoms might be caused by Filosa's marital problems and resulting stress.

Filosa testified that in late 2014, his headaches were sometimes incapacitating, and he again raised the possibility of a tumor with a doctor. He was referred to a neurologist, whom he saw in November of that year. The medical record from the appointment at which he received the referral described Filosa's last year as "pretty healthy" and noted that he had had "a lot of headaches, for many years," which Filosa's mental health care provider thought might be the result of concussions from playing football years earlier.

Filosa underwent brain imaging at Bay Radiology San Ramon, and was told on December 8, 2014 that the results of this test showed a cyst or a tumor in his brain. A re-review of the 2010 MRI imaging then showed a "relatively subtle" mass, which had increased by 2014. Filosa underwent surgery to resect the mass, which caused adverse physical effects.

Filosa served a notice of his intent to bring an action against defendants on November 16, 2015. He then filed this action on March 3, 2016, alleging a single cause of action for medical negligence based on the failure to diagnose the brain mass at the time of his 2010 MRI.

Defendants moved for summary judgment, which the trial court granted on the ground the action is barred by the statute of limitations. Filosa appeals from the ensuing judgment.

## DISCUSSION

We review the grant of summary judgment de novo and decide independently whether the parties have met their burdens and whether there are triable issues of material fact. (*Jessen v. Mentor Corp.* (2008) 158 Cal.App.4th 1480, 1484.) The defendant has the initial burden on summary judgment to show that undisputed facts establish an affirmative defense.

4

(*Drexler v. Peterson* (2016) 4 Cal.App.5th 1181, 1188 (*Drexler*).)  Once the defendant meets that burden, the burden shifts to the plaintiff to show a triable issue of material fact regarding the defense.  (*Jessen*, at pp. 1484–1485.)  We review the evidence in the light most favorable to the plaintiff.  (*Id*. at p. 1485.)  Although application of the statute of limitations is normally a question of fact, the question becomes one of law when the evidence is susceptible of only one reasonable conclusion.  (*Brewer v. Remington* (2020) 46 Cal.App.5th 14, 28 (*Brewer*).)

## I.   Statute of Limitations for a Failure-to-Diagnose Claim

The limitations period for medical malpractice actions is found in section 340.5, which provides that "the time for the commencement of the action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first.  In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following:  (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person."  Filosa does not contend any of these tolling provisions apply here; thus, to avoid the bar of the statute of limitation, his action must have been brought on the *earlier* date of three years after his injury or one year after he discovered the injury, plus 90 days under section 364, subdivision (d).[3]  (*Doe v. Doe 1* (2012) 208 Cal.App.4th 1185, 1193.)

---

[3] Section 364 requires a plaintiff to give at least 90 days' notice of intent to file an action for medical malpractice, and provides that if the notice is served within 90 days of the expiration of the applicable statute of limitations, the limitation period is extended 90 days from service of the notice.  (§ 364, subds. (a) & (d).)  Our high court has interpreted these

5

The resolution of this case depends crucially on the date of Filosa's injury.  The term "injury" for purposes of section 340.5 " 'refer[s] to the damaging effect of the alleged wrongful act and not to the act itself.' [Citation.]  The injury is not necessarily the ultimate harm suffered, but instead occurs at 'the point at which "appreciable harm" [is] first manifested.' " (*Brewer*, *supra*, 46 Cal.App.5th at p. 24.)  An injury manifests when damage is "evidenced in some significant fashion; when the damage has clearly surfaced and is noticeable."  (*Warren v. Schecter* (1997) 57 Cal.App.4th 1189, 1203.)  Because the three-year limitations period accrues at the time of injury, it is the surfacing of appreciable harm that marks the beginning of the three-year period.

For purposes of the one-year period, discovery of the injury means the plaintiff has discovered "both his or her injury and its negligent cause." (*Drexler*, *supra*, 4 Cal.App.5th at p. 1189.)  The plaintiff "need not be aware of either the specific facts or the actual negligent cause of the injury.  [Citation.] If the plaintiff has notice or information of circumstances that would put a reasonable person on inquiry notice, the limitation period is activated." (*Brewer*, *supra*, 46 Cal.App.5th at p. 24.)

The situation before us here is somewhat unusual, in that the harm allegedly was the result of defendants' negligent failure to diagnose a hidden condition in existence at the time of his 2010 MRI.  "When a plaintiff brings a malpractice action based on the defendant's failure to diagnose . . . a latent, progressive condition, identification of the 'injury' is more difficult" than in the common case of a health care provider performing a procedure that causes injury.  (*Drexler*, *supra*, 4 Cal.App.5th at p. 1192.)  The correct

---

provisions to toll the statute of limitations for 90 days.  (*Russell v. Stanford University Hospital* (1997) 15 Cal.4th 783, 786–791.)

standard where a plaintiff alleges failure to diagnose a progressive condition, the *Drexler* court concluded, is that a plaintiff "discover[s] the injury when the undiagnosed condition develops into a more serious condition. . . . With the worsening of the plaintiff's condition, or an increase in or appearance of significant new symptoms, the plaintiff with a preexisting condition either actually (subjectively) discovers, or reasonably (objectively) should be aware of, the physical manifestation of his or her injury." (*Id.* at p. 1194.) The question of "when a plaintiff discovers that a preexisting condition has developed into a more serious condition is often a factual issue." (*Id.* at p. 1195.)

The plaintiff in *Drexler*, like Filosa, alleged his doctors negligently misdiagnosed the cause of his headaches, only later to discover they were caused by a brain tumor for which he needed surgery that caused him physical harm. (*Drexler*, *supra*, 4 Cal.App.5th at pp. 1183–1184.) On the facts before it, the appellate court concluded summary judgment for the defendants was improper; although the plaintiff continued to suffer severe and debilitating headaches for a period of years during which his doctors failed to discover the cause of his headaches, it was only when new symptoms associated with the brain tumor appeared—including double vision, difficulty swallowing, and balance problems—that the court could say, as a matter of law, that a more serious condition had developed. (*Id.* at pp. 1196–1197.) There was no evidence in either Drexler's deposition testimony or his medical records that his headaches became more intense after defendants' failure to diagnose, nor that any medical professional "told him that he needed an MRI because his symptoms, although constant, had persisted for too long." (*Id.* at pp. 1196–1197.) The evidence did not establish that other symptoms he experienced, such as shoulder and neck pain, were related to his headaches

7

or were signs of a brain tumor. (*Id*. at p. 1196.) "In the absence of such evidence, whether Drexler actually discovered, or reasonably should have discovered, his injury more than a year before he filed his malpractice claim remains a factual issue for trial." (*Id*. at p. 1197.) The court concluded there were triable issues of material fact as to when Drexler experienced "appreciable harm that would commence the statute of limitations." (*Ibid*.)

The *Drexler* court noted that only one prior California case had considered when a plaintiff with a misdiagnosed hidden condition suffers appreciable harm. (*Drexler, supra,* 4 Cal.App.5th at p. 1192.) The plaintiff in that case, *Steingart v. White* (1988) 198 Cal.App.3d 406 (*Steingart*), discovered a lump in her breast, which the defendant doctor diagnosed as a benign condition in February 1982. The plaintiff was suspicious about the diagnosis, and so saw a second doctor a few months later and received a mammogram, which was negative for cancer. (*Id*. at pp. 409–410.) In 1984, she went to a third doctor, who ordered another mammogram, which was again negative. (*Id*. at p. 410.) In April 1985, she noticed a change in the contour of her breast and was found to have stage II breast cancer. (*Ibid*.) The action was filed in March 1986, more than four years after defendant's initial examination of the plaintiff, but within one year of the diagnosis of breast cancer. (*Ibid*.) The trial court granted summary judgment based on the statute of limitations, and the court of appeal reversed. (*Id*. at pp. 409, 411.)

*Steingart* rejected the defendant's argument that the plaintiff suffered an injury at the time defendant examined her in 1982, instead concluding that, although the plaintiff knew about the lump at the time of the 1982 examination, "such a condition is not a clear indication of injury, either damaging effect or appreciable harm." (*Steingart*, 198 Cal.App.3d at pp. 414–

8

415.)  Indeed, the plaintiff "was told repeatedly the lump was nonthreatening," so no appreciable harm was manifested from the doctor's asserted neglect until her cancer was discovered in April 1985.  (*Id*. at p. 415.)  Thus, the action was not barred by the three-year limitations period of section 340.5.  (*Ibid*.)

As to the one-year period, the *Steingart* court concluded that there was at least a triable issue of fact as to whether the plaintiff exercised reasonable diligence when she had misgivings about the initial diagnosis of a benign condition.  "Reasonable minds could easily conclude Steingart did everything within her power to ascertain what, if any, illnesses she had after receiving White's initial diagnosis."  (*Steingart*, 198 Cal.App.3d at pp. 415–416.)

*Steingart* has been interpreted to mean that "although actual damage may have been done to the plaintiff, no 'injury' occurs until there is some evident harm or detrimental effect."  (*Marriage & Family Center v. Superior Court* (1991) 228 Cal.App.3d 1647, 1653–1654.)  As the court stated in *Marriage & Family Center*, "We accept the *Steingart* proposition that severe damage which does not show itself (hidden cancer, for instance) is not 'injury' until it is found by diagnosis.  It does not follow, however, that damage which has clearly surfaced and is noticeable is not 'injury' until either the plaintiff or her physician recognizes it."  (*Id*. at p. 1654; accord, *McNall v. Summers* (1994) 25 Cal.App.4th 1300, 1304, 1311 [loss of memory constituted " 'injury' " for purposes of triggering three-year period even if plaintiff did not discover actual organic injury (stroke resulting from electroconvulsive therapy) causing memory loss].)

In sum, an action is barred under section 340.5 if it is brought *either* more than three years after an injury *or* more than one year after the plaintiff discovers, or in the exercise of reasonable diligence should have

9

discovered, the injury and its negligent cause. (*Doe v. Doe 1*, *supra*, 208 Cal.App.4th at p. 1193; *Drexler*, *supra*, 4 Cal.App.5th at p. 1189.) Injury from the failure to diagnose a latent, progressive condition occurs "when the undiagnosed condition develops into a more serious condition," and that more serious condition is made manifest by an appreciable increase or alteration in symptoms. (*Id*. at p. 1194.) A patient's concerns or suspicions about a diagnosis do not trigger the statute of limitations when no more serious condition is manifest and no lack of diligence is shown. (*Steingart*, *supra*, 198 Cal.App.3d at pp. 414–416.)

## II. The Three-Year Rule Does Not Bar Filosa's Claim

We consider first the date of Filosa's injury for purposes of the three-year limitations period. Although defendants correctly identify the legal standard as the date on which appreciable harm is made manifest, they inexplicably date Filosa's injury to September 2010, when Dr. Alagappan failed to notice evidence of the brain tumor in Filosa's first MRI.

Defendants even go so far as to contend there is no dispute that Filosa's injury occurred in September 2010, misreading both *Drexler* and Filosa's argument applying *Drexler* as addressing only discovery of the injury and the one-year statute of limitations. But Plaintiff's opening brief on appeal expressly states that " 'injury' " has the same meaning for the three-year and the one-year limitations periods, that injury occurs when appreciable harm first manifests, and that a reasonable jury could conclude that Filosa's injury occurred in December 2014. And *Drexler* discusses not only the date on which plaintiff discovered his injury but also whether the plaintiff's symptoms "constituted the appreciable harm that would commence the statute of limitations" (*Drexler*, *supra*, 4 Cal.App.5th at pp. 1195–1197), noting that the same "injury commences both the three-year and the one-year

10

limitations periods" (*id*. at p. 1189). In *Drexler*, as in this case, the question of when the plaintiff discovered his injury and when the appreciable harm was made manifest is one and the same.

On the question of when Filosa's injury occurred, we think Plaintiff has the better argument. Defendants have not established that undisputed facts show Filosa's injury to have occurred in September 2010. That is, there was no immediate " 'damaging effect' " apparent on the day Dr. Alagappan failed to diagnose Filosa's brain tumor. (*Brewer*, *supra*, 46 Cal.App.5th at p. 24.)

Defendants also fail to establish that Plaintiff discovered his injury no later than when his first medical leave began in July 2011, as they also contend. The evidence is that Filosa suffered constant and debilitating headaches, including acute episodes, both before and after his MRI in 2010, and that his headaches worsened steadily over the many years he complained of them. But a reasonable trier of fact could conclude that events in the months following Dr. Alagappan's failure to diagnose his tumor were not the manifestation of a more serious condition, but merely the continuation of Filosa's previous condition.

Although the undisputed evidence does establish that Filosa's headaches continued to worsen in the years after September 2010, it does not establish that by July 2011 Plaintiff "became aware of additional, appreciable harm from his preexisting condition." (*Drexler*, *supra*, 4 Cal.App.5th at p. 1190.) At one point in his deposition Filosa testified he experienced "more different types" of headaches between 2010 and 2014, but he also testified his headaches in 2014 were the same types he had experienced in 2010, and his descriptions of the type of headaches he suffered in the two time periods were similar. He described his pain from headaches before 2010 "spik[ing] up based upon acute episodes like the electric shock or the strain from the eyes,

11

et cetera." By 2014, he testified, the headaches involved "sharp pains and lightning and . . . general pressure," and he had vision problems. In any event, none of this testimony was specific to the increasing severity of Filosa's headaches in the 10-month period between his first MRI and his first medical leave, so none of it establishes that a more serious condition had, by July 2011, manifested itself.

Furthermore, the record contains evidence from which a trier of fact could reasonably infer the increase in symptoms that disrupted Filosa's life in 2011 was caused by factors other than the tumor. Filosa's wife was diagnosed with serious mental health problems, his marriage ended, and he found himself with full responsibility for three children. In the turmoil, he sought mental health treatment for stress and depression, and his medical records strongly suggest that his medical leave was associated with these mental health issues, as they reference a "specialty referral" apparently to his mental health treatment provider. Also, Filosa's physician explicitly attributed Filosa's need for a second leave of absence a few months after the first to the stress and anxiety Filosa was experiencing. Asked at deposition about the reason for these two medical leaves, Filosa responded they were "[f]or not being able to function and perform, and headaches and myriad of other symptoms I was experiencing." Asked to elaborate on the other symptoms plaguing him in 2012 and 2013, Filosa mentioned extreme fatigue, eye strain, brain fog, an inability to concentrate, and difficulty functioning "at a mental executive capacity."

Nothing in the record compels the conclusion that these other problems were connected to the undiagnosed tumor or to any increase, since September 2010, in the severity of Filosa's headaches. The evidence therefore does not establish, as a matter of law, the appearance of a more serious condition that

would trigger the statute of limitations.  (See *Drexler*, *supra*, 4 Cal.App.5th at pp. 1196–1197.)

Although a factfinder might ultimately conclude some of these symptoms were effects of the brain tumor and that appreciable harm from the failed diagnosis manifested more than three years before Filosa brought this action, this record does not permit that question to be resolved on summary judgment.

## III.    The One-Year Rule Does Not Bar Filosa's Claim

We are also unpersuaded that the one-year limitations period bars this action as a matter of law.  The one-year period commences when a plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its negligent cause.  (*Steingart*, *supra*, 198 Cal.App.3d at pp. 411–412, 415; *Drexler*, *supra*, 4 Cal.App.5th at p. 1190.)  We have already rejected Defendants' contention that Filosa discovered his injury no later than the beginning of his first medical leave in July 2011.  We likewise reject Defendants' arguments that, as a matter of law, Filosa should have discovered his injury and its negligent cause more than a year before he filed his complaint.

Defendants point to Filosa's testimony about increasingly severe headaches but fail to establish, as a matter of law, that these would have prompted a person of reasonable diligence to discover the brain tumor. Defendants emphasize that in approximately 2013, more than a year before he filed his complaint, Filosa asked a doctor if a brain tumor might account for his symptoms.  But Filosa's doctor reassured him.  "[H]is immediate response was, 'No, your blood work doesn't show anything that would indicate cancer and you've already had an MRI that says it's negative."  As was the case in *Steingart* when the plaintiff had misgivings about her

13

diagnosis and received false reassurance, "[r]easonable minds could easily conclude [Filosa] did everything within [his] power to ascertain what, if any, illnesses [he] had after receiving [defendants'] initial diagnosis." (*Steingart, supra*, 198 Cal.App.3d at p. 410, 416.) Nor does the evidence show unambiguously that, even if Filosa suspected a tumor, he knew, or reasonably should have known, that his original MRI was negligently misinterpreted. (See *Brewer, supra*, 46 Cal.App.5th at p. 26 ["even when there is an appreciable manifestation of harm, that harm may not necessarily cause any suspicion of wrongdoing"].)

Defendants' argument gains nothing from an additional incident they cite, when Filosa passed out or became light-headed at home and then in his doctor's office and had to be taken to San Ramon Regional Medical Center. In his deposition, Filosa testified he was uncertain when this event occurred but thought it might have been in 2012. However, his medical records describe a remarkably similar episode occurring in 2009. They ascribe the episode to a severe flu Filosa developed a few days earlier and to low levels of potassium in his blood, rather than to anything related to his headaches. Thus, the evidence is readily susceptible to an inference that the event took place before his first MRI, or—if there were two separate events—that the episode after the MRI did not indicate new symptoms and would not have put a reasonable person on notice of a possible brain tumor.

In short, the undisputed facts do not establish that Filosa was on notice of his injury and should have discovered it and its negligent cause, through the exercise of reasonable diligence, more than a year before he filed his complaint. We express no view as to what the evidence will show at trial,[4]

_____

[4] Defendants' motion for summary judgment was also based on the theory that Filosa could not meet his burden to show they breached the

14

but on this record Defendants have not carried their initial burden on summary judgment to establish their statute of limitations defense.

## DISPOSITION

The judgment is reversed.  Filosa shall receive his costs on appeal.


TUCHER, J.

WE CONCUR:

POLLAK, P. J.
STREETER, J.

---

*Filosa v. Alagappan et al.* (A156412)

---

standard of care or caused his injuries.  They raise no argument in support of this issue in their respondents' brief, and we treat it as abandoned for purposes of summary judgment.

Filed 01/08/21

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| MICHAEL FILOSA,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>RAVI ALAGAPPAN et al.,<br><br>      Defendants and Respondents. | A156412<br><br>(Contra Costa County<br>Super. Ct. No. MSC17-01396)<br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION |

THE COURT:

The opinion in the above-entitled matter filed on December 21, 2020, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

Date: _____ P.J.

Trial Court:   Contra Costa County Superior Court
Trial Judge:  Hon. Susanne Fenstermacher

Counsel:       Law Offices of Tiffany J. Gates, Tiffany J. Gates; Walkup,
               Melodia, Kelly & Schoenberger, Michael A. Kelly and Valerie
               N. Rose for Plaintiff and Appellant

               Cole Pedroza LLP, Kenneth R. Pedroza, Cassidy C. Davenport;
               and Donnelly, Nelson, Depolo, Murray & Efremsky, Vanessa
               L. Efremsky for Defendants and Respondents

*Filosa v. Alagappan et al.* (A156412)