Filed 5/25/21  Ortega v. Emanuel Medical Center CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CESAR ORTEGA, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> EMANUEL MEDICAL CENTER, <br><br> Defendant and Respondent. | F079329 <br><br> (Super. Ct. No. CV-18-001199) <br><br><br> **OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Stacy P. Speiller, Judge.

Bravo Law Office and Joseph K. Bravo for Plaintiff and Appellant.

Dummit, Buchholz & Trapp, Daniela P. Stoutenburg and Thomas M. Gray for Defendant and Respondent.

-ooOoo-

---

[*]	Before Hill, P.J., Smith, J. and De Santos, J.

Cesar Ortega (plaintiff) filed this medical malpractice action alleging defendant, Emanuel Medical Center (EMC), misdiagnosed his condition, resulting in injury. Plaintiff appeals from the judgment entered after EMC's motion for summary judgment was granted, on the ground the statute of limitations had run before plaintiff filed his complaint or gave notice of intent to sue. We conclude the undisputed material facts demonstrated plaintiff's action was untimely and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In early December 2016, plaintiff's primary care provider diagnosed him with acute sinusitis, cough, and a vitamin D deficiency, and ordered a chest X-ray; the X-ray findings were consistent with pneumonia. Two days later, plaintiff went to the emergency department at EMC, where he was diagnosed with pneumonia and prescribed antibiotics. Plaintiff's primary care provider continued to treat him for pneumonia through January 2017. On January 31, 2017, plaintiff received the results of a CT scan from his primary care provider; the diagnosis was a mass of the lung. On February 7, 2017, plaintiff's primary care provider diagnosed probable metastatic lung cancer and referred plaintiff to an oncologist. Plaintiff underwent a biopsy and surgical placement of a lifeport; the pathology report from the biopsy showed plaintiff had a fungal infection. On February 27, 2017, the oncologist informed plaintiff he did not have cancer, he had a lung infection; an assistant in that office told plaintiff a big mistake was made regarding the CT scan. On March 14, 2017, Dr. David Olson, an infectious disease physician, diagnosed plaintiff with valley fever, and discussed with him the pathophysiology of the fungal infection and the lifelong therapy that would be necessary.

On March 19, 2018, plaintiff served EMC with a notice of intent to sue, pursuant to Code of Civil Procedure section 364.[1] Ninety-one days thereafter, on June 18, 2018,

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

plaintiff filed his complaint against EMC and others (collectively defendants), alleging one cause of action for medical malpractice. He alleged he saw defendants for diagnosis and treatment, but defendants misdiagnosed him with pneumonia, when the proper diagnosis was valley fever. Plaintiff was unnecessarily hospitalized and treated for pneumonia, delaying proper treatment for valley fever. Plaintiff alleged he was injured thereby and sought to recover damages.

EMC filed a motion for summary judgment, asserting plaintiff's action was barred by the statute of limitations.[2] Plaintiff's opposition disputed only a portion of one of the 30 facts set out in EMC's separate statement of undisputed material facts. Plaintiff also offered a separate statement of 16 additional facts he contended raised triable issues of material fact on the statute of limitations issue. The trial court granted EMC's motion and entered judgment in its favor. Plaintiff appeals.

## DISCUSSION

### I. Standard of Review

Summary judgment is properly granted when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).) "Since summary judgment involves pure matters of law, we review a grant of summary judgment de novo. [Citations.] In undertaking our independent review of the evidence submitted, we apply the same three-step analysis as the trial court. First, we identify the issues framed by the pleadings. Next, we determine whether the moving party has established facts justifying judgment in its favor. Finally, if the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable, material fact issue." (*Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433, 1438.) We consider all the evidence

---

[2] The motion was captioned as a motion for summary adjudication. Because it sought adjudication in EMC's favor of the single cause of action alleged in the complaint, it was actually a motion for summary judgment, and we will refer to it as such.

presented, except that which the trial court properly excluded. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) " 'We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' " (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

## II. Application of the Three-step Analysis

Plaintiff contends the trial court failed to conduct the three-step analysis used in ruling on motions for summary judgment. He asserts the trial court looked only at the allegations of the unverified complaint and did not cite any undisputed material facts supporting its conclusion that, when plaintiff was diagnosed with valley fever, he was on inquiry notice that EMC's diagnosis of pneumonia may have been incorrect.

" 'A defendant has the initial burden to show that undisputed facts support summary judgment based on the application of an affirmative defense.' [Citations.] 'The statute of limitations operates in an action as an affirmative defense.' [Citation.] ' "[T]he question of when there has been a belated discovery of the cause of action, especially in malpractice cases, is essentially a question of fact," ' and ' "[i]t is only where reasonable minds can draw but one conclusion from the evidence that the question becomes a matter of law." ' " (*Drexler v. Petersen* (2016) 4 Cal.App.5th 1181, 1188–1189 (*Drexler*).) " '[W]here the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper.' " (*Id.* at p. 1189.)

The trial court looked to the complaint to frame the issues to be addressed: the complaint alleged EMC misdiagnosed plaintiff by failing to diagnose valley fever. The trial court expressly found EMC "met its initial burden of showing that the complaint is time-bar[r]ed because plaintiff failed to file it within a year of being diagnosed with valley fever." Implicitly it found the valley fever diagnosis was sufficient to put plaintiff on inquiry notice that the pneumonia diagnosis may have been wrong. The dates of the

4.

valley fever diagnosis, service of plaintiff's notice of intent to sue,[3] and the filing of the complaint were included in EMC's separate statement of undisputed material facts and were not disputed by plaintiff.

Plaintiff disputed only a portion of one of the undisputed material facts presented by defendant. He presented an additional 16 facts, which he contended raised triable issues of material fact regarding the timeliness of his action; the evidence plaintiff cited in support of his additional facts was his own declaration. The trial court overruled EMC's objections to plaintiff's declaration. Because the trial court expressly overruled the objections, it presumably considered plaintiff's additional facts in ruling on the motion and found them insufficient to raise a triable issue of material fact on the statute of limitations issue. Thus, we cannot say from its ruling that the trial court failed to apply the three-step analysis.

Even if, as plaintiff contends, the trial court failed to use the three-step analysis in ruling on the motion and failed to cite the undisputed material facts supporting its ruling, those shortcomings alone do not constitute grounds for reversal. When a trial court grants a motion for summary judgment, it must, "by written or oral order, specify the reasons for its determination. The order shall specifically refer to the evidence proffered in support of and, if applicable, in opposition to the motion that indicates no triable issue exists." (§ 437c, subd. (g).) On appeal, however, we review the trial court's ruling de novo, conducting our own three-step analysis and determining independently whether the moving party is entitled to summary judgment. The trial court's "failure to perform its statutory duty [to provide a statement of the reasons for its determination] does not

---

[3]    Section 364 requires a plaintiff to give at least 90 days' notice of intent to file an action for medical malpractice and provides that, if the notice is served within 90 days of the expiration of the applicable statute of limitations, the limitation period is extended 90 days from service of the notice. (§ 364, subds. (a), (d).) These provisions have been interpreted to toll the statute of limitations for 90 days when the notice of intent to sue is provided in the last 90 days of the limitation period. (*Russell v. Stanford University Hospital* (1997) 15 Cal.4th 783, 786–791.)

automatically result in reversal. We need only determine whether the record establishes the [moving parties'] entitlement to summary judgment in their favor.… 'We are not confined, in considering the granting of the summary judgment, to the sufficiency of the stated reasons. It is the validity of the ruling which is reviewable and not the reasons therefor.' " (*Ruoff v. Harbor Creek Community Assn.* (1992) 10 Cal.App.4th 1624, 1627–1628.) "The [trial] court's stated reasons for granting summary judgment are not binding on us because we review its ruling, not its rationale." (*Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1168.) Even if the trial court made its ruling for the wrong reasons, if its ruling is correct on any theory, it will be affirmed. (*Curcini v. County of Alameda* (2008) 164 Cal.App.4th 629, 637.)

Consequently, because we review the trial court's ruling de novo, the question is not whether the trial court failed to apply the three-step analysis, but whether the result it reached was correct on the merits, regardless of its analysis.

## III. Accrual of a Cause of Action

### A. Standards for accrual and late discovery

A plaintiff must bring a claim within the limitations period after accrual of the cause of action. (§ 312.) Generally, a cause of action accrues "when the cause of action is complete with all of its elements," including the wrongful act and the resulting harm. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397.) The most important exception to the accrual rule is the discovery rule, which postpones accrual until the plaintiff discovers, or has reason to discover, the cause of action. (*Ibid.*) The discovery rule "may be expressed by the Legislature or implied by the courts." (*Ibid.*)

The statute of limitations applicable to medical malpractice actions is found in section 340.5, which provides: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the

6.

injury, whichever occurs first." (§ 340.5.)  The general rule applies to the three-year period, which runs from the date of injury.  (*Ibid*.)  The discovery rule applies to the one-year period, and postpones accrual until "the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury."  (*Ibid*.)  The action must be filed within both time periods in order to be timely.  (*Rose v. Fife* (1989) 207 Cal.App.3d 760, 767–768.)  EMC's motion for summary judgment contended the plaintiff's action was barred because it was not filed within the one-year period.

"[T]he term 'injury,' as used in section 340.5, means both 'a person's physical condition *and* its "negligent cause." ' "  (*Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 896.)  "Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that [his] injury was caused by wrongdoing, that someone has done something wrong to [him].…  [T]he limitations period begins once the plaintiff ' " 'has notice or information of circumstances to put a reasonable person *on inquiry* .…' " '  [Citation.]  A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery.  Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, [he] must decide whether to file suit or sit on [his] rights.  So long as a suspicion exists, it is clear that the plaintiff must go find the facts; [he] cannot wait for the facts to find [him]."  (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110–1111, fn. omitted.)

## B.  Late discovery of misdiagnosis

Plaintiff argues that when a medical malpractice cause of action is based on misdiagnosis of the plaintiff's disease or condition, the harm does not occur when a contradictory diagnosis is made, but "when the patient determines that they have received the appropriate medical treatment."  Although plaintiff discusses the *Drexler* case and apparently bases his argument on it, he cites nothing in that case supporting his interpretation of the rule.

In *Drexler*, the plaintiff repeatedly consulted his primary care physician, Dr. David J. Petersen, about headaches and neck pain. (*Drexler*, *supra*, 4 Cal.App.5th at pp. 1184–1187.) Dr. Petersen diagnosed tension headaches. (*Id*. at p. 1184.) When the plaintiff asked to have an MRI performed, Dr. Petersen declined to order one. (*Id*. at p. 1185.) The plaintiff was referred to a neurologist when he complained of tingling in his fingers and arm pain, and was diagnosed with carpal tunnel syndrome. (*Id*. at pp. 1185–1186.) On January 15, 2011, plaintiff obtained his medical records, then consulted an attorney about suing both doctors for malpractice. (*Id*. at p. 1187.) The attorney said the plaintiff did not have a case. (*Ibid*.) In October 2012, the plaintiff complained to other medical providers of headaches and double vision but did not stay for an MRI because the line was too long. In January 2013, he complained of unsteady gait, progressive voice hoarseness, and difficulty swallowing that had occurred in the prior three months; an MRI at that time revealed a brain tumor. (*Ibid*.) Emergency surgery to remove the tumor resulted in serious injuries. (*Ibid*.)

The plaintiff sued Dr. Petersen and the neurologist for negligent failure to diagnose, and delay in diagnosing, his brain tumor. (*Drexler*, *supra*, 4 Cal.5th at p. 1188.) The trial court granted the defendants' motion for summary judgment on statute of limitations grounds, finding the one-year limitations period barred the plaintiff's claim against the defendants; the plaintiff had a suspicion of Dr. Petersen's wrongdoing by January 15, 2011, when he consulted an attorney, and a suspicion of the neurologist's wrongdoing in 2010 when the neurologist diagnosed carpal tunnel syndrome. (*Ibid*.) The appellate court reversed the judgment. (*Id*. at p. 1198.)

Although the court acknowledged "[t]he fact that [the plaintiff] contemplated suing [the defendants was] strong evidence that [the plaintiff] suspected the doctors had not properly diagnosed or treated his headaches," "the one-year and three-year limitations periods did not begin to run until [the plaintiff] discovered his injury—that is, became aware of additional, appreciable harm from his preexisting condition—and, with respect

8.

to the one-year limitations period, also had reason to believe that injury was caused by the wrongdoing of" the defendants. (*Drexler*, *supra*, 4 Cal.5th at p. 1190.) The issue in the case was "not whether [the plaintiff] had actual or constructive knowledge of the doctors' alleged wrongdoing, but when [the plaintiff] discovered his injury." (*Ibid.*) The injury was " 'the damaging effect of the alleged wrongful act and not … the act itself.' " (*Ibid.*) Injury occurs when appreciable harm is first manifested, and it may become apparent before the ultimate harm or diagnosis. (*Id.* at pp. 1190–1191.) " 'Each case necessarily will turn on its own particular circumstance.' " (*Id.* at p. 1191.)

"When a plaintiff brings a malpractice action based on the defendant's failure to diagnose, or misdiagnosis of, a latent, progressive condition, identification of the 'injury' is more difficult." (*Drexler*, *supra*, 4 Cal.5th at p. 1192.) " '[T]he injury is not the mere undetected existence of the medical problem at the time the physician failed to diagnose or treat the patient or the mere continuance of that same undiagnosed problem in substantially the same state. Rather, the injury is the *development* of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment.' " (*Id.* at p. 1193.) "[T]he plaintiff in such a case may discover the injury when the undiagnosed condition develops into a more serious condition, but before it causes the ultimate harm. [Citation.] With the worsening of the plaintiff's condition, or an increase in or appearance of significant new symptoms, the plaintiff with a preexisting condition either actually (subjectively) discovers, or reasonably (objectively) should be aware of, the physical manifestation of his or her injury." (*Id.* at p. 1194.)

The defendants in *Drexler* argued the plaintiff suffered appreciable harm because his headaches became worse and he suffered additional symptoms at least by January 2011. (*Drexler*, *supra*, 4 Cal.5th at p. 1195.) The plaintiff initially contended his injury did not manifest until his brain tumor was correctly diagnosed, but on appeal, conceded his increased symptoms in October 2012 may have commenced the one-year limitations period. (*Id.* at pp. 1195–1196.) His action was filed within one year of that date. (*Id.* at

p. 1188.)  The court found the evidence was not undisputed that the plaintiff discovered his injury more than one year before filing suit, and the defendants were not entitled to summary judgment.  (*Id*. at p. 1197.)

Thus, in *Drexler*, the plaintiff initially contended the statute of limitations commenced to run when the correct diagnosis was made, and subsequently conceded it may have commenced earlier, when his symptoms worsened.  Nothing in *Drexler* supports an argument that the commencement of the limitations period in a misdiagnosis case is delayed until the plaintiff becomes satisfied that the subsequent diagnosis is correct.

## C.    EMC's evidentiary showing

EMC's motion for summary judgment asserted plaintiff's action was barred by the one-year limitations period, which begins to run when "the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury."  (§ 340.5.)  The discovery "rule sets forth two alternate tests for triggering the limitations period:  (1) a subjective test requiring actual suspicion by the plaintiff that the injury was caused by wrongdoing; and (2) an objective test requiring a showing that a reasonable person would have suspected the injury was caused by wrongdoing.  [Citation.]  The first to occur under these two tests begins the limitations period."  (*Kitzig v. Nordquist* (2000) 81 Cal.App.4th 1384, 1391.)  EMC's motion for summary judgment sought to establish plaintiff's action was barred under the objective test; EMC contended that, regardless of plaintiff's actual suspicion or lack thereof, a reasonable person in his situation would have suspected his injury was caused by wrongdoing more than one year before he gave notice of his intent to sue.

The undisputed facts and evidence presented by EMC in its motion for summary judgment indicated that, on December 3, 2016, a physician in EMC's emergency department diagnosed plaintiff with pneumonia and prescribed antibiotics.  His primary care provider continued with that diagnosis and treatment until January 31, 2017, when

he diagnosed a mass of the left lung based on a CT scan. Plaintiff underwent a PET/CT scan; as a result, on February 7, 2017, he was diagnosed with lung cancer and referred to an oncologist. The oncologist agreed with the diagnosis. Plaintiff underwent a biopsy and placement of a lifeport in his chest for chemotherapy treatments. On February 27, 2017, the oncologist told plaintiff, based on the biopsy results, that he had a fungal infection, not cancer. In the next two days, that diagnosis was repeated by plaintiff's primary care provider and the surgeon who performed the biopsy. On March 14, 2017 the infectious disease physician identified the fungal infection as valley fever and explained the necessary treatment.

The one-year limitations period commences when the plaintiff discovers both the physical manifestation of the injury and its negligent cause. (*Rose v. Fife*, *supra*, 207 Cal.App.3d at p. 768.) "[N]o 'injury' occurs until there is some evident harm or detrimental effect." (*Marriage & Family Center v. Superior Court* (1991) 228 Cal.App.3d 1647, 1654.) This is not a case like *Drexler*, where the only physical manifestation of injury or detriment resulting from the alleged misdiagnosis was the worsening of the plaintiff's condition or the appearance of new symptoms. The undisputed facts indicate that, after EMC diagnosed plaintiff with pneumonia, he continued to seek treatment for his complaints. He was subsequently diagnosed with possible cancer, subjected to surgery, then rediagnosed with valley fever. If, as plaintiff contends, EMC should have diagnosed valley fever in December 2016, then the unnecessary surgery and placement of a lifeport was a result of the misdiagnosis and a physical manifestation of injury or detriment resulting from it.

As to the alleged negligent cause of plaintiff's injury, a plaintiff "is charged with 'presumptive' knowledge of his negligent injury, and the statute commences to run, once he has ' "notice or information of circumstances to put a reasonable person *on inquiry*, or *has the opportunity to obtain knowledge* from sources open to his investigation." ' " (*Gutierrez v. Mofid*, *supra*, 39 Cal.3d at pp. 896–897.) The facts indicate plaintiff was

informed on February 7, 2017, by his primary care provider and on February 9, 2017, by his oncologist, that his diagnosis was probable metastatic lung cancer. That diagnosis was sufficient to put a reasonable person on notice that the previous diagnosis of pneumonia might have been erroneous. Plaintiff had the opportunity to question either physician about the reasons for the change in diagnosis and the accuracy of the EMC diagnosis. Thus, he had both the means and the opportunity to discover the alleged wrongdoing.

Further, on February 27, 2017, and February 28, 2017, plaintiff saw his oncologist and his primary care provider, and each told him he did not have cancer. Based on the biopsy results, they diagnosed a fungal lung infection. On March 14, 2017, the infectious disease physician to whom plaintiff's primary care provider had referred him, diagnosed the fungal lung infection as valley fever. Again, plaintiff had the opportunity to make inquiries of any of these physicians about the previous diagnoses, testing, and treatments, and to raise questions about the accuracy of the EMC diagnosis.

In his reply brief, plaintiff seems to contend his uncertainty about whether the valley fever diagnosis was the final or correct diagnosis postponed commencement of the limitations period until his treatment for that condition resulted in improvement in his health, thereby confirming the diagnosis. He asserts "EMC's position … that a different subsequent diagnosis, whether correct or not, starts the statute of limitations clock running" "mischaracterizes or ignores facts which would have caused a reasonable person … to withhold judgement [*sic*] *or make further inquiry* whether he had been correctly diagnosed with Valley Fever until the medical treatment he received … demonstrated that it was the correct diagnosis." (Italics added.) Under the discovery rule, however, the statute of limitations commences to run before the patient gathers all the facts supporting his cause of action. (*Jolly v. Eli Lilly & Co.*, *supra*, 44 Cal.3d at p. 1111 [a plaintiff need not be aware of the specific facts necessary to establish the claim in order for the statute of limitations to commence running].) The statute of limitations

begins to run when the plaintiff has information of circumstances sufficient to put the plaintiff on inquiry. (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807–808.) Plaintiff now seems to concede he was on inquiry at the time he was diagnosed with valley fever.

A potential plaintiff "has reason to discover the cause of action when he has reason at least to suspect a factual basis for its elements. [Citation.] He has reason to suspect when he has ' " ' "notice or information of circumstances to put a reasonable person *on inquiry*" ' " ' [citation]; he need not know the 'specific "facts" necessary to establish' the cause of action; rather, he may seek to learn such facts through the 'process contemplated by pretrial discovery'; but, within the applicable limitations period, he must indeed seek to learn the facts necessary to bring the cause of action in the first place—he 'cannot wait for' them 'to find' him and 'sit on' his 'rights'; he 'must go find' them himself if he can and 'file suit' if he does." (*Norgart v. Upjohn Co.*, *supra*, 21 Cal.4th at p. 398.) Thus, when a patient has facts that would cause a reasonable person to suspect a misdiagnosis, he is put on inquiry, which triggers the statute of limitations and gives him one year to investigate and bring suit, if he chooses to do so. The investigation does not postpone accrual of the cause of action.

Further, the statute of limitations is not triggered by a "correct" subsequent diagnosis, but by facts that would cause a reasonable person to suspect that the prior diagnosis was incorrect. Subsequent diagnoses, correct or not, may cast doubt on the accuracy of an initial diagnosis and cause a reasonable person to suspect the initial diagnosis was incorrect.

The undisputed material facts demonstrate that, by February 27, 2017, and certainly no later than March 14, 2017, a reasonable person in plaintiff's position would have had a suspicion that EMC failed to correctly diagnose his condition and that he had undergone an unnecessary biopsy as a result. Plaintiff did not serve his notice of intent to sue until March 19, 2018, more than one year later. Consequently, the trial court

13.

correctly concluded that EMC met its initial burden of showing that the one-year statute of limitations barred plaintiff's action and EMC was entitled to judgment as a matter of law. The burden of production then shifted to plaintiff to make a prima facie showing of the existence of a triable issue of material fact. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 845.)

### D.     Plaintiff's showing

Plaintiff disputed only a portion of one of EMC's undisputed material facts, which stated that, when plaintiff's primary care provider diagnosed a mass of the lung on January 31, 2017, "[t]here was no longer any diagnosis of pneumonia. Plaintiff was informed that he likely had cancer, not pneumonia." Plaintiff asserted: "At no time was there any statement made that there was no longer any diagnosis of pneumonia." Plaintiff failed to cite any supporting evidence. Even disregarding the challenged statement, however, the undisputed facts presented by EMC were sufficient to carry its initial burden.

In opposition to EMC's motion for summary judgment, plaintiff filed a separate statement of 16 additional material facts he contended raised triable issues and precluded summary judgment. The supporting evidence for all of the facts was plaintiff's declaration. Many of the additional facts simply repeated facts included by EMC in its separate statement concerning plaintiff's medical care. Others denied that plaintiff suspected wrongdoing or misdiagnosis by EMC, denied that his doctors told him EMC erred in its diagnosis, claimed he knew of other instances in which doctors were unable to diagnose patients, and asserted he thought uncertainty in diagnoses was a regular part of medicine. These additional facts address the subjective portion of the discovery rule: whether plaintiff had actual knowledge or an actual suspicion that his injury was caused by wrongdoing. They do not address the alternative objective test of discovery, which was the basis of EMC's motion and which focuses on whether a reasonable person would have suspected the injury was caused by wrongdoing. Consequently, the additional facts

14.

plaintiff presented were not material to EMC's motion for summary judgment and did not raise a triable issue of material fact.

## DISPOSITION

The judgment is affirmed.  EMC is entitled to its costs on appeal.